SCHLESINGER *et al.* v. THE TEXAS & ST. LOUIS RAIL-
WAY COMPANY, *Appellant.*

1. **Broker, Agency of.** A broker for the purpose of signing the memoranda of the sale is the agent of both parties to the contract which he makes; but in other respects he is only the agent of the party originally employing him.

2. **Agency:** QUESTION OF FACT. Whether one was the agent of one person or another in a transaction, *held,* properly submitted to the jury.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Phillips & Stewart* for appellant.

(1) The contract shown in evidence was not a bought and sold note. Wharton on Agency, sec. 719. Thorne was not the agent of appellant for any purpose; and the contract offered in evidence and all the facts in the record show that he was acting for respondent in making and delivering the said contract. (2) The uncontradicted testimony shows that Thorne sold the rails in controversy to defendant. Thorne submitted a bid in his own name for four thousand tons of rails, and this bid was accepted by defendant, and up to the time of furnishing the letter of credit Thorne was bound as principal to furnish the rails according to the terms agreed on, and then for the first time defendant knew that Thorne had a principal behind him. Under these facts Thorne cannot be regarded as appellant's agent.

*G. M. Stewart* for respondents.

(1) The case was tried below upon the correct theory of the law, as applied to the undisputed facts. The contention of appellant, that Thorne was agent of plain-

tiffs, is without support. *Wood v. Rocchi*, 32 La. An. 210 ; Story on Agency, 31 ; Wharton on Agency, section 715 ; Benjamin on Sales (4 Am. Ed.) 276. (2) Irrespective of the question of agency the verdict and judgment are for the right party.

BLACK, J.—The plaintiffs are engaged in the iron, and steel business at New York, Boston and London, under the firm name of Naylor & Company. This suit was brought to recover insurance paid by them for defendant on a cargo of iron from Antwerp to Galveston. The defendant admits the liability for the insurance, but pleads a counter-claim for damages for an alleged failure on the part of plaintiffs to punch the irons in accordance with directions furnished Thorne, who, the. defendant says, was the agent of the plaintiffs. Plaintiffs reply that Thorne was the agent of defendant, and that they punched the iron as directed by him. The judgment was for plaintiffs on the counter-claim. Defendant appealed.

In the early part of 1880 Mr. Paramore was at New York seeking to purchase iron for defendant, of which corporation he was president. He there met with Thorne who was a broker in iron and sometimes dealt on his own account. Mr. Paramore received a bid from Thorne for four thousand tons of iron, and also bids from other parties,. came to St. Louis, and, after some correspondence with Thorne, accepted the latter's bid for the iron, two thousand tons of which were to be German iron. Paramore went to New York, when Thorne handed him a memorandum of sale, written on one of Thorne's letter heads, which begins as follows : "Iron and steel rails sold for account of Messrs. Naylor & Co. to the Texas & St. Louis R. R. Co., per J. W. Paramore, Esq., Pres." It then describes the iron, two thousand tons, and terms of sale, among which it is provided that payment is to be made in four months, approved London bankers' acceptance to be furnished immediately on signing the

contract, and that the rails are to be punched for first plates and notched according to directions furnished by purchaser. The contract is dated March 3, 1880, and signed, "Chas. H. Thorne," beneath which is written, "Accepted March 15, 1880, Texas & St. Louis Ry. Co., By J. W. Paramore, Pres." After making this acceptance, Mr. Paramore was introduced to the plaintiffs by Thorne and at once arranged for the bankers' acceptance.

Thereafter, and in the month of March, Naylor & Company applied to Thorne for directions for punching. Communications were had between Thorne and Paramore, not preserved in the record, but on the twentieth of March, 1880, Thorne wrote Paramore, acknowledging receipt of "punching for rails," and asked for a drawing to be made by defendant's engineer, or the Bolt and Iron Company, of St. Louis. Paramore had the drawing made and forwarded to Thorne. On the 27th of March, 1880, Thorne addressed a letter to plaintiffs, giving them directions for punching. There is some confusion in these dates, but the evidence tends to show that Thorne furnished the directions before he received the drawing. At all events the evidence tends to show that the rails were punched with round holes, in strict compliance with the only directions received by them. Also that Thorne was directed by defendant to have the bolt-holes made oval. Some of the evidence also tends to show that the drawing and directions sent Thorne by the Bolt and Iron Company indicated round holes, but it is quite clear Thorne knew the holes were to be oval, for he wrote Paramore, on the twenty-ninth of March, that he had given directions to that effect.

Mr. Paramore states that he supposed that he was dealing with Thorne directly, and not as a broker, and had no other intimation ; that when he made the acceptance of the contract, Thorne desired him to do so, saying that plaintiffs would take the contract off his hands. Plaintiffs' cashier testifies that his house knew Thorne

first in the early part of 1880, when he called for quota-
tions for two thousand tons of iron for the defendant;
that they gave him a price, "f. o. b. Europe," and af-
terwards received Mr. Paramore's order, and arranged
with him for the bankers' credit.   Thorne's evidence is
to the effect that he acted as a broker throughout; he
says he applied to the plaintiffs and other dealers for
prices and finally consummated the transaction in ques-
tion; that he first met Mr. Paramore, or communicated
with him and found he was in the market for iron.

The court, among others, gave the following instruc-
tion, at the request of plaintiffs, of which complaint is
made :

"The court instructs the jury that a broker for the
purpose of signing bought and sold notes is the agent of
each and both of the parties to the contract which he
makes, but in all other respects he is and remains the
agent of the party who originally employs him.   If,
therefore, the jury find in this case that the defendant
first employed the broker, Mr. Thorne, or first set him
in motion on the business involved in this controversy,
they are instructed that he was and remained the agent
of defendant, so far as any agency resulted from the
above facts, and that any mistakes he may have made in
conveying to plaintiffs the directions of defendant as to
the manner of punching these rails are the mistakes of
the defendant's own agent, and the plaintiffs are not re-
sponsible therefor."

For some purposes, as the signing of the contract,
the broker is regarded as the agent of both parties.
Hence he is accustomed to give the buyer a note, called
a sold note, and the seller a like memorandum, called a
bought note.   Story on Agency (9 Ed.) sec. 28 ;  Benj.
on Sales, sec. 275.   While he represents both parties in
making the memorandum, he represents, in all other
matters, the party originally employing him.   Wharton
on Agency, sec. 715.   The instruction seems to enunciate
correct principles of law, and, taking the contract as the

parties made it, it shows Thorne was acting as a negotiator. He does not profess in it to be a principal, but professes to act for the plaintiff and defendant in the matter of signing the contract. Whatever Mr. Paramore may have supposed, previous to this, the contract shows that Thorne was a middle man in the matter, and in accordance with its terms Mr. Paramore completed the transaction in this shape by arranging with plaintiffs for the bankers' acceptance. Much of the evidence tends to show that Mr. Thorne was employed by the defendant and that plaintiffs so understood the transaction, for their subsequent dealings, both as to the instructions for punching and the insurance, would indicate this. There was certainly evidence upon which to base the instruction, and the instruction leaves it for the jury to determine who first employed Mr. Thorne.

The other instructions given on the one side and the other are to the effect that if defendant did furnish directions through Thorne, and the rails were punched pursuant to such directions, then the finding on the counter-claim should be for plaintiffs, unless Thorne was the agent of plaintiffs. And on the other hand, if the defendant furnished the directions to plaintiffs, or their agent, and those directions were not complied with, the finding should be for the defendant on the counter-claim. Also, that if the iron was sold to defendant by plaintiffs through Thorne, and he acted as the agent of plaintiffs in such sale and was still their agent when specifications were sent to him, then furnishing specifications to Thorne was a compliance with the contract on the part of the defendant.

The only substantial evidence going to show that Thorne was the agent of the plaintiffs is the fact that they paid his commissions, but this, it is shown, is the custom in New York, in such cases. Notwithstanding the custom we think it was evidence to be considered by the jurors. The instructions, it will be seen, leave it as a question of fact for the jurors to determine, as to

whose agent Thorne was, both at the time the contract was made and at the time the directions or specifications for punching were furnished. We cannot say there was error in submitting the issues tendered by the pleadings. Defendant's refused instruction practically directed a verdict and was properly refused.

The judgment is affirmed. Tne other judges concur,