### 11496. LYSLE MILLING Co. v. WHITFIELD GROCERY Co.

LUKE, J. 1. The evidence as to material facts in the case was conflicting, and the court erred in directing a verdict for the defendant.

2. The amendment to the motion for a new trial is without merit.

　　　*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*

DECIDED JANUARY 27, 1921.

　　Action on contract; from Baldwin superior court — Judge Park. April 5, 1920.

　　The action was for an alleged purchaser's breach of contract by refusal to accept and pay for 420 barrels of flour, alleged to have been sold through a merchandise broker. The plaintiff alleged that the broker represented both parties, and that they were bound by the broker's memorandum of the terms of sale. The defendant company denied that it was represented by the broker, and it contended that there was no binding contract between the parties. The court directed a verdict for the defendant. The case came to this court on exceptions to the direction of the verdict and to the overruling of a motion for a new trial.

　　On the trial the broker, W. E. Epps, of Athens, Ga., who did business under the name of O'Farrell Brokerage Company, testified, that about July 27, 1917, he called up by telephone Mr. Whitfield, of the Whitfield Grocery Company, of Milledgeville, Ga., the defendant, and sold to the defendant two carloads of flour, 420 barrels, on terms subsequently stated in a "memorandum" or letter by himself. This letter, a copy of which was received by the defendant, was headed with the business designation of the broker, and was as follows: "Athens, Ga., July 27th, 1917. The J. C. Lysle Milling Co., Leavenworth, Kansas. Gentlemen: We are pleased to confirm sale for your account to Whitfield Grocery Company, Milledgeville, Ga., 420 barrels flour, Monarch basis, at $11.40 delivered, 60 days shipment, open terms. Yours truly, O'Farrell Brokerage Company, by W. E. Epps, Manager." The witness testified: "The O'Farrell Brokerage Company was acting as broker, representing both parties, buyer and seller, in that transaction. . . The paper [set out above] was signed by me. It was delivered to the J. C. Lysle Milling Company on July 27, 1917. In executing this instrument I was acting in the capacity of broker, representing both parties concerned. . . As to whether

this instrument or memorandum contains all of the terms of the contract of sale, yes. As to whether or not this sale was made subject to baking samples being satisfactory, no; . . he asked me about baking samples, and I told him the mill would not sell that way. I told him they would ship the flour, and then, if it didn't give satisfaction, he could ship it back. . . As to what reason they gave me for canceling the contract, well, they stated that it was too good for one of the brands and not good enough for the other. . . They further stated that they had not signed the contract and would not pay the difference." The witness testified that about August 23d or 24th he received a letter as follows: "Milledgeville, Ga., August 22, 1917. W. E. Epps, Athens, Ga. Dear Sir: Referring to the Lysle samples, beg to advise they show up very well, but we are unable to match the grade we are now using under our private brands, your brands either being poorer or better. For that reason we will not be able to use the flour, which we regret. Yours truly, Whitfield Grocery Co." The witness testified that he notified the plaintiff that the defendant had canceled the order and refused to accept the flour. The market price of this flour, he testified, had declined about $1 per barrel by August 23d or 24th, being then $10.40, and this was the price on September 27, 1917. The suit was for the difference between this price and the alleged contract price.

Whitfield testified, that Epps did not represent him in any way whatever in the transaction in question, and that he did not authorize Epps to sign anything for him; that he had a conversation over the telephone with Epps, in which Epps was trying to sell flour, and that he told Epps that if the flour matched a private brand used in his (Whitfield's) business, he would take 420 barrels; that Epps agreed to this and said the samples would come down the next day; that the agreement was that he would take 420 barrels provided the samples would come up to his requirements; that he (Whitfield) had to write for the samples, and on August 3 he got them, and they did not come up to the requirements, as they did not match the brand in the defendant's store, and he wrote the letter to Epps, declining to take the flour and stating the reasons for not taking it; that he heard nothing more about it and was not notified that the plaintiff intended to hold him liable until in December following. A telegram dated July

28, 1917, from Athens, Ga., signed " J. C. Lysle Milling Co.," addressed to Whitfield Grocery Company, and saying " Confirm booking two cars Monarch basis eleven forty cotton delivered," was introduced in evidence; also a letter dated July 31, 1917, from Epps to Whitfield Grocery Company, saying, " We are enclosing herewith contract covering sale 420 barrels flour sold you on the 27th, from the J. C. Lysle Milling Co., which we will thank you to sign and return to us at your earliest convenience." The form of contract referred to in this letter was introduced in evidence by the defendant, over objection of the plaintiff. It was dated " 7/27, 1917," and began as follows: " Order No. ——— Whitfield Grocery Co., of Milledgeville, Ga., orders from The J. C. Lysle Milling Co., Leavenworth, Kans., F. O. B., at mill, freight allowed to Milledgeville, shipment within 60 days unless otherwise specified. R. R. delivery. Terms 30 days open. Draw draft through ..................... bank." Then followed the description and the price of the flour ordered, and the words, " Cotton quality guaranteed absolutely satisfactory. This order will become a binding contract only when accepted by mail or telegraph by the home office of The J. C. Lysle Milling Co, Leavenworth, Kans. When so accepted it becomes a binding contract, subject to all the conditions contained above and on the back hereof, all of which terms and conditions are hereby agreed to." Under this was a space for a signature, followed by the word " Buyer," and a statement that the order was taken by Silas W. Davis, salesman. On the back of this order were printed conditions, that " all terms of sale are included in this contract; no salesman has authority to modify it; . . no .verbal agreement will be recognized," provisions as to the mode of settlement if the buyer should fail to furnish shipping directions in contract time, etc. This form of contract, Whitfield testified, was mailed to him after he had the talk about the flour with Epps, and was not signed; his reason for declining to sign was that the sale was to be subject to baking samples, and when the samples came they did not match his grade of flour; it was not because of inferiority that he rejected the flour, and decline in price had nothing to do with its rejection. He knew that Epps had booked him an order, and that Epps was a broker, trading in the name of O'Farrell Brokerage Company. He received the telegram from Epps as to booking the two cars; it

was not in accordance with their conversation, and he called up Epps "the next day or two and asked him for samples."

One of the grounds of the motion for a new trial was that the court erred in admitting in evidence the unsigned form of contract introduced by the defendant, over the objection that it was irrelevant. Another ground was that the court erred in admitting the testimony of Whitfield that Epps did not represent him in the transaction, the plaintiff objecting co it as being a mere "conclusion of the witness on the law of the case." Another ground was that the court excluded a part of the answer of the witness Epps to the question, "What reason did they give you for canceling the contract?" the excluded part being: "Well, they virtually agreed that the reason why they didn't take the flour was on account of declined price; the market price was off a dollar a barrel." This "was being read to the jury from depositions of said witness after proper notice had been given to defendant for their execution and at which defendant failed to appear," and "related to a part of a conversation," the remainder of which the court admitted in evidence.

*O. J. Tolnas, Sibley & Sibley,* cited, as to agency of broker and effect of broker's memorandum: Black's Law Dict. 154; 19 Cyc. 186; 90 U. S. 330; 87 Mo. 146; Civil Code (1910), § 4107. As to direction of verdict: Civil Code (1910), § 5926; 8 *Ga. App.* 255(2); 4 *Ga. App.* 553(4).

*Allen & Pottle,* for defendant.