## STATE *v.* WALLIS.

Opinion delivered December 17, 1892.

1. *Parol evidence—Conditional execution of bond.*
   Parol evidence is admissible, in a suit upon a bond, to show that certain sureties who subscribed it did so upon condition that, before it should become effective, it should be signed by certain other sureties.

2. *Bond—Conditional execution.*
   Where a bond is signed by sureties, upon condition that it shall not become effective until signed by certain other sureties, an observance of the condition is necessary to bind such signers, as to all persons who deal with the bond having notice of the condition ; and, where the condition exists, the fact that those who have not signed it are named as sureties in the bond is held to give notice of its existence.

3. *Bond—Presumption as to signature.*

> Where a person's name appears in the body of a bond as a surety, but he failed to subscribe the bond in the usual place, there is no legal inference, from the fact that he signed an affidavit as to his solvency attached to the bond and certified the jurat to the affidavit of another surety, likewise attached to the bond, that he intended to bind himself by the bond, nor is such intention necessarily to be inferred from his permitting the bond to pass to the principal's hands to be delivered by him; whether he meant to be bound by the bond as it stood or left it unsigned because he refused to complete it, are questions of fact.

4. *Construction of statute—Prospective effect.*

> The act of March 17, 1891, which provides that it shall not *hereafter* "be a defense in favor of any surety on any bond or obligation that he became surety there on condition that the principal obligor should procure the co-suretyship of other persons before the said instrument should be delivered," does not expressly or by implication apply to existing bonds.

Appeal from Scott Circuit Court.

EDGAR E. BRYANT, Judge.

In 1885 the Attorney General, under the provisions of ch. 103 of the Acts of 1885, employed W. W. Wallis as attorney on behalf of the State to collect amounts due the sixteenth section school fund in Scott county. Before the notes and accounts belonging to the fund were delivered to him, Wallis executed to the State a bond conditioned for the faithful keeping, collecting and accounting for the school fund, as follows :

"STATE OF ARKANSAS, }
  COUNTY OF SCOTT.   }

*Know all men by these presents:* That I, W. W. Wallis, as principal, and J. C. Gilbreath, Free Malone, John Rawlings, C. Malone, Daniel Hon and Catherine Gilbreath, as securities, are jointly and severally held and bound unto the State of Arkansas, in the sum of seven thousand, seven hundred and eighty-one dollars and fifty-one cents ($7,781.51), the payment of which well and truly to be made we bind ourselves, our heirs,

executors and administrators, firmly by these presents. Witness our hands and seals this 14th day of July, A. D. 1885.

The condition of the above obligation is such that whereas, etc., [giving the conditions of the bond].

[Signed]

W. W. WALLIS,
DANIEL HON,
FREE MALONE,
C. MALONE,
JOHN RAWLINGS."

Neither J. C. Gilbreath nor Catherine Gilbreath, whose names appear in the body of the bond, signed it. After the signatures follow the several affidavits of the persons named in the bond as sureties, in the following order : John Rawlings, Free Malone, C. Malone, Catherine Gilbreath, Daniel Hon, J. C. Gilbreath. The affidavit of Gilbreath is as follows :

"STATE OF ARKANSAS, )
  COUNTY OF SCOTT.    }

I, J. C. Gilbreath, do swear that I am worth three thousand, three hundred and thirty-one and 52-100 dollars in property, in Scott county, State of Arkansas, subject to execution over and above all my debts and liabilities and exemptions under existing laws, as follows :

Pt. sw 1-4 sw 1-4 sec. 21, tp. 3 N., r. 29 W., (brick block) worth $3331.52-100.

[Signed]                          J. C. GILBREATH.

Sworn to before me this 14th day of July, A. D. 1885.

M. M. BEAVERS,

[SEAL.]                           Notary Public.

Upon the back of the bond is indorsed the following, to-wit :

" Approved this 16th day of July, 1885.

R. B. RUTHERFORD,
Judge Twelfth Judicial Circuit of Arkansas."

On the 13th of June, 1890, the State brought this action for the use of the school fund, alleging that Wallis had embezzled and converted to his own use the sum of $1354.50. J. C. Gilbreath having previously died, his administrator, together with the principal and the other sureties, was made a defendant.

The administrator of J. C. Gilbreath filed an answer, on the 7th day of August, 1890, in which he alleged, by way of defense, that it was not true that said J. C. Gilbreath at any time signed, executed or delivered the bond sued on as the surety of the said W. W. Wallis, or otherwise.

On the same day the defendants, Rawlings, Hon, Free Malone and C. Malone, filed their joint answer, in which the following defense was set out: That, at the time they signed said bond, they were severally approached by the said W. W. Wallis, who requested them to sign said bond as sureties, and stated to them that he would, before delivery of said bond, also procure as additional sureties J. C. and Catherine Gilbreath, whose names were at the time written in said bond; and so the defendants say that, relying upon the promises and statements of the said Wallis, as aforesaid, they signed the bond upon the condition that, before the same should be delivered or become effective, it should be signed by J. C. and Catherine Gilbreath as sureties, and that they would not have signed said bond except upon the condition that J. C. and Catherine Gilbreath should also become sureties thereon. And defendants say that, upon condition alone that said bond should not be delivered to plaintiff until J. C. and Catherine Gilbreath had become sureties thereon, did they sign, and that neither J. C. nor Catherine Gilbreath ever signed or became a surety upon said bond.

The case was submitted to the court upon the following evidence:

It was admitted by both parties in open court that defendant, W. W. Wallis, was, by the Attorney General of the State of Arkansas, Dan. W. Jones, appointed in 1885 as attorney to collect and transmit the funds pertaining to the sixteenth section school lands in Scott county; that W. W. Wallis, as such attorney, collected of the money arising from said funds the sum of $1706.50, and of that sum the said W. W. Wallis failed to pay over the sum of $1354.50; that said amount still remains unpaid and owing to the plaintiff; that the signatures of all of the defendants to the bond, and jurat and affidavits to the bond, were the genuine signatures of the parties therein mentioned.

John Rawlings testified as follows: "Wallis came to me and told me that he had received the appointment as attorney for the sixteenth section school fund, and would have to make bond, and told me the amount of it, and named the parties who would go on the bond with him, to-wit: J. C. Gilbreath, Daniel Hon, C. Malone, Freeman Malone and Catherine Gilbreath. He said that the Gilbreaths would make the principal part of the bond. I mean by the Gilbreaths, J. C. Gilbreath, L. D. Gilbreath and Catherine Gilbreath, wife of L. D. Gilbreath. When the bond was signed, Mr. M. M. Beavers, notary public, brought the bond around for me to sign. I don't know whether Wallis was present or not. I don't remember of any conversation at this time, but I saw the names of the parties I was told would sign were mentioned in the bond and part of them had signed it, and I signed it. In my first conversation, I told Wallis that I had some objections to going on the bond, but when he told me who would sign it I consented to sign the bond."

Freeman Malone, Daniel Hon and C. Malone testified to substantially the same effect as John Rawlings, with reference to the circumstances under which they signed the bond.

Each of the above witnesses admitted and testified that he knew that Catherine Gilbreath was a married woman at the time of the execution of the bond.    It was also in evidence that J. C. Gilbreath, whose jurat is attached to the affidavit of Catherine Gilbreath, is the same J. C. Gilbreath mentioned in the body of the bond, and the same who made affidavit to the bond and signed his own name to the affidavit.

Each of the witnesses for the defense testified that they never saw the bond after it was signed by them; that they never consented that the bond should be delivered without the signature of J. C. Gilbreath, and would not have signed the bond had they not been assured by Wallis that J. C. Gilbreath would sign it as surety with them.

This was all the evidence in the case.

The court found the facts to be as follows :

That the copy of the bond, and the affidavits thereto, exhibited with the complaint, is a true copy of the bond sued on, and that said bond and affidavits were signed by the parties in the manner and form as shown by said copy; that John Rawlings, C. Malone, Free Malone and Daniel Hon, each and all, signed said bond on condition that the principal, W. W. Wallis, should procure the signature of J. C. Gilbreath thereto, and that they did not know that the bond was delivered without that signature, and did not consent to such delivery; that Catherine Gilbreath was, at the time of the execution of said bond, and is now, a married woman.

Upon these facts the court declared the law to be :

1.    That the signatures of J. C. Gilbreath and Catherine Gilbreath to the affidavits, without evidence to the effect that they thereby intended to sign the bond, will not be legally construed to be signatures to the bond.

2.   That the face of the bond was sufficient to put the obligee upon inquiry as to the reason for the absence of the Gilbreaths' signatures, and that the delivery of the bond without the signature of J. C. Gilbreath effected no contractual relation between the obligee and the obligors who had signed it; and that the second section of the act of March 17, 1891, cannot retrospectively raise that relation, for to thus give a retroactive effect to that statute would be to create a contract between the parties that they did not enter or intend to enter into, or at least it would have the effect to increase the liability of the obligors who signed the bond beyond what was contemplated by the agreement that they did enter into.

3.   That, at the time of the filing of the defendant's answer herein, the issues as made up presented a good defense in bar to the action, and that the right of defense on the issues joined cannot be divested by the subsequent action of the legislature, for by that action the defense already invoked by proper answer, not demurrable at the time of filing, is entirely taken away, and not merely changed and modified in its manner of presentation.

The court adjudged that the complaint be dismissed, and that defendants recover their costs.   The State has appealed.

*James B. McDonough and W. E. Atkinson*, Attorney General, for appellant.

1.   Judgment should certainly have been against Wallis, the principal.   Black on Judg. sec. 23, p. 30 and cases cited.

2.   The conclusion is inevitable that the Gilbreaths intended to execute and did execute the bond.   The whole paper is one instrument, and each signed their signature to the paper.   The place or point where the signature appears is immaterial—if the signer intended to execute the instrument.   See. 7 Jones L. (N. C.) 510 ; 12 Allen, 138 ; 3 H. & U. (Va.) 144 ; 115 Mass. 586 ; 1 Ves. Sr. 6 ;

7 Wend. 345; .64 Me. 35. Gilbreath in every way acknowledged this to be his act and deed, and his signature to the affidavit and his .delivery of the bond is execution thereof. 7 Yerg. 401; 2 Dev. L. 90; 8 Blackf. (Ind.) 413; 7 Ill. 265: 64 Ill. 526; 6 Gill (Md.), 250; 1 Call (Va.), 224; 2 Am. and E. Enc. Law, p. 457. Gilbreath is estopped to deny that it is his deed. 34 N. W. Rep. 774; 12 Atl. Rep. 289; 16 N. E. Rep. 842; 42 Minn. 115: 129 U. S. 86; 28 S. C. 470; 81 Ga. 199; 16 Ore. 433; 80 Ga. 641; 39 La. An. 896; 76 Ga. 709; 73 Mich. 58; 26 Am. Dec. 737; 53 *id.* 162; 23 Am. Rep. 199.

3. The State had no notice of any verbal agreement with Wallis that Gilbreath was to sign the bond. She is only a trustee, and not the owner of the fund. Without such notice such a condition does not bind the State. 21 Am. Rep. 461; 29 *id.* 371; 89 Am. Dec. 507; 24 Gratt. 202; 16 Wall. 1; 2 Metc. (Ky.), 608; 31 Ind. 76; 53 Me. 284; 3 Am. L. Reg. (N. S.), 399 and note; 56 N. Y. 67; 63 Mo. 212; 7 Neb. 4; 25 Am. Rep. 706; 24 Ind. 481.

4. Under the act of 1891, even if Gilbreath did not sign, the court should have rendered judgment against the Malones, Hon and Rawlings for four-fifths of the amount due. Acts 1891, p. 91; 45 Ark. 41; *ib.* 413; 53 *id.* 560; 48 *id.* 187; 43 *id.* 420; 44 *id.* 365; 3 Dallas, 386. Remedial statutes are retrospective. 15 Fed. Rep. 147; 95 U. S. 173; 67 Pa. St. 479. The Federal constitution does not prohibit the enactment by the States of retrospective laws. 32 Fed. Rep. 24; 8 Pet. 88; 2 Pet. 380; 11 *id.* 420; 95 U. S. 173; 4 Wall. 172; 23 *id.* 137; Myer on Vested Rights, pp. 22, 30, 112. There is no vested right to a rule of evidence. Meyer, Vested Rights, p. 112, sec. 380; 23 Kas. 425; 7 Watts, 300; 36 Pa. St. 29. A State statute may make valid a voidable contract. 2 Pet. 380; 6 S. and M. 513.

5. The filing of the answer cannot add to or take away from the power of the legislature. 86 Ala. 617;

87 *id.* 30 ; 39 N. W. Rep. 92; 78 Iowa, 450 ; 23 Pac. Rep. 76; 104 N. C. 442; 83 Mich. 153; 26 N. E. Rep. 1013.

*Rogers & Read* for appellees.

1.   The evidence sustains the finding of the court that the sureties signed upon the express condition that Gilbreath would sign it, and that Gilbreath did not sign it.   Some authorities hold that a bond so delivered is an escrow, and if delivered to the obligee without the additional sureties, it is void, whether the obligor had notice or not of the condition.   32 N. Y. 445; 3 Ala. 38 ; 25 Am. Rep. 703; 6 How. (Miss.), 123; 5 Hun, 133; 14 Am. Rep. 349.   By far the larger number and more recent cases hold that the obligee must have actual or implied notice of the condition upon which the sureties sign.   28 Am. Dec. 679; 18 *id.* 400 ; 7 Pet. 435; 7 Cr. 219 ; 11 Vt. 447 ; 18 Gratt. 801 ; 22 Ind. 399; 17 Mass. 591 ; 2 Pick. 24 ; 4 La. An. 380; 37 Mich. 590 ; 14 Cal. 421; 21 Cal. 589; 16 Wall. 1.   For more recent decisions, see 45 Ind. 213; 65 *id.* 398 ; 87 *id.* 560 ; 75 Va. 317; 151 Mass. 460; Mechem, Offices and Officers, sec. 270. This court adopted this rule in 48 Ark. 440, 466.

2.   The act of 1891 was not intended to apply to suits then pending, or bond theretofore executed.   Potter's Dwarris on St. and Const. p. 162, n. 9 ; 1 Hill, 325; 2 *id.* 238 ; 7 Johns. 499; 10 Wend. 362; 12 *id.* 490; 57 N. Y. 473 ; 41 Am. Dec. 274 ; Suth. St. Const. sec. 481; 1 Blackf. 220 ; 1 How. (Miss.), 183 ; 24 Ark. 385 ; 6 *id.* 484.   But if intended to be retroactive, it is unconstitutional.   57 N. Y. 473; 6 Ark. 484.

HEMINGWAY, J.   Proof that such of the defendants as subscribed the bond did so upon the condition that other persons named in it as sureties would sign it, was not incompetent.   It was not designed to vary the terms of a written instrument, but to show that there never

was a complete execution of such instrument. For this purpose it was competent. *Ware* v. *Allen*, 128 U. S. 590.

We are of opinion that the evidence sustains the court's finding that the subscribing sureties signed their names upon the condition that J. C. Gilbreath, whose name appeared in the body of the bond as a surety, would sign it. Such being the fact, the writing did not become the bond of said sureties, unless Gilbreath signed it. That an observance of such conditions is essential to the complete execution of the bond and a pre-requisite to its validity, as to all persons who dealt with it knowing or having notice of the condition, seems to be established without division among the authorities ; and where the condition exists, the fact that those who have not signed it are named as sureties in the bond is held to give notice of it. *Pawling* v. *U. S.* 4 Cr. 219; *Dair* v. *U. S.* 16 Wall. 1; *Butler* v. *U. S.* 21 Wall. 272; *State* v. *Church-ill*, 48 Ark. 440; *Sharp* v. *U. S.* 4 Watts, 21; S. C. 28 Am. Dec. n. 679; *State Bank* v. *Evans*, 3 Green, L. Rep. 155; Public Officers, Throop, secs. 259–60–1–2–3.

This case, then, depends upon the question whether J. C. Gilbreath signed ·the bond.

It is admitted that he did not subscribe it in the usual manner ; that his name is written in the face of it as a surety; that he signed an affidavit as to his solvency, which is attached to it; and that he certified and signed the jurat to the affidavit of another surety which is likewise attached to it. It would not be inferred that he signed the bond from an inspection of the bond proper ; but it is insisted that he either intended to adopt the writing of his name in the bond as a signature to it, or that he intended his signature to the jurat and affidavit to be a signature to the bond, and that such intention is necessarily to be inferred from his permitting the bond to pass to the principal's hands and be delivered by him.

Gilbreath died before the suit was brought, and no explanation of his conduct could be made by him. . How the bond passed from his hands after he signed the affidavit and jurat does not appear, and there is no showing that he knew it had been delivered. No explanation is furnished of his failing to subscribe it, and the question as to his signing it is to be determined from the fact that he did not subscribe it and the circumstances stated.

Under the law there can be no objection to the manner or form in which an obligor makes his signature to a bond, provided it appears that he made it for the purpose of binding himself. "The question being always open to the jury whether the party, not having signed regularly at the foot, meant to be bound by it as it stood, or whether he left it unsigned because he refused to complete it." Brandt on Suretyship and Guaranty (2d ed.), p. 127, sec. 89.

Or, as is elsewhere stated, it does not matter where the signature is if it was made to authenticate the bond as the act of the party. The effect of the court's finding is that Gilbreath did not intend, by any signature or act of his, to authenticate the bond as his act; and we can not disturb that finding unless the contrary is necessarily to be inferred from his acts. That he contemplated signing it, we think must be inferred; but that he ever at any time intended that it should then and there become his bond, or that any act done by him should have the effect of a signature, is not so clear. Affidavits of sureties perform no essential part in making such bonds; the approving officer must be satisfied that the sureties are solvent, but may act upon his own knowledge or upon affidavits. It is usual to prepare and tender such affidavits, but there is no particular reason why they should not be prepared before the bond is signed; to make them, the presence of an officer authorized to administer oaths is necessary, and it may. not at all times be had; and if the facilities for making the affidavits are arranged before

the party contemplating becoming a surety is ready to consummate the relation, we know no reason why he should not make the affidavit and withhold his signature from the bond until he is satisfied to execute it.

The making of the affidavit is in no legal sense the final act in making the bond, so that it can be understood as intended to be a consummation of it ; nor is an approving officer justified in accepting as the bond of any person an instrument not subscribed by him, merely because he is named in the bond as surety and has made an affidavit with a view to becoming such. It is not usual for persons intending to become sureties to execute a bond in that way ; and where such a person might have signed the bond but did not, a reasonable inference is that he made the affidavit as a preliminary to the completion of the bond, and, before the time came to sign it, changed his purpose. As two inferences could be drawn from the circumstances, we must accept that in support of the verdict.

The plaintiff insists that, though this be true, the bond is validated, against the sureties who signed it, by the act of 1891. But that act does not expressly or by any necessary implication apply to existing bonds, and it must therefore be held as intended to apply only to bonds to be made thereafter. Potter's Dwarris, p. 162 n. 9; Sutherland, Stat. Con. sec. 481 ; *Couch* v. *McKee*, 6 Ark. 484; *Trapnall* v. *Burton*, 24 Ark. 385.

Whether if so intended it could have a broader application, we need not determine. See 1 Whar. Con. sec. 368 ; *New York, etc., R. Co.* v. *Van Horn*, 57 N. Y. 473.

There should have been a judgment against the principal in the bond, upon the facts found, and the judgment that should have been entered below will be entered here. The judgment as to the sureties is affirmed.

COCKRILL, C. J., did not participate in the decision of this case.