## WESTERN UNION TELEGRAPH CO. *et al.* v. GRIFFITH.

1. A bill of exceptions may in this court be amended by the record so as to include the names of all necessary or proper parties who might have been joined with the party excepting as plaintiffs in error; aliter, as to parties defendant not named in the writ of error, who are unwilling to waive service and consent that the case be heard on its merits.

(*a*) The test to be applied in determining whether one sought to be introduced by amendment could have been joined with the excepting party as a plaintiff in error is, were they on the same side of the controversy in the trial court? for such litigants only as were coparties below can properly appear before this court as parties plaintiff.

(*b*) All formal parties to the pleadings in the trial court are proper parties to a writ of error; though since the passage of the practice act of 1881, such of them only as will really be affected by the judgment to be rendered in this court are to be regarded as indispensable parties.

(*c*) In the present case, the party brought before this court by amendment to the bill of exceptions was not a necessary defendant in error, but a proper, if not an essential, party plaintiff.

2. As was, in effect, ruled when this case made its first appearance here, the plaintiff's petition set forth a cause of action and was not open to demur-

rer on the ground that there was a misjoinder of parties defendant. The
plaintiff went even further into detail than was necessary in describing
the location of the wires and poles belonging, respectively, to the defend-
ant companies ; but the petition was defective in that it failed to state
with sufficient particularity at what points the plaintiff expected to prove
that they negligently permitted their wires to remain in contact. They
were not, however, entitled to notice as to the character or extent of the
evidence upon which the plaintiff expected to rely as showing knowledge
on their part of facts with which they were alleged to have been
acquainted.

3. The petition did not disclose facts showing that the plaintiff was not en-
titled to recover expenses incurred for medical attention, etc., but was
subject to demurrer on the ground that the amount of such expenses was
not therein alleged.

Argued February 8,—Decided August 7, 1900.

Action for damages.    Before Judge Eve.    City court of Rich-
mond county.    August 7, 1899.

*J. S. & W. T. Davidson* and *F. G. duBignon*, for plaintiffs in
error. *C. H. Cohen, J. R. Lamar*, and *Boykin Wright*, contra.

FISH, J.    When this case came on to be heard at the October
term of this court, counsel for Mrs. Griffith presented a motion
to dismiss the writ of error, on the ground that the Augusta
Railway and Electric Company was a necessary party thereto,
but had not been named as such in the bill of exceptions.
Thereupon counsel for the Telegraph Company, without con-
ceding that the Railway Company was an indispensable party,
asked leave to amend the bill of exceptions "from the record
in the case," agreeably to the provisions of the Civil Code, § 5570,
by inserting the name of the latter company as a coplaintiff in
error.    After argument had as to the right of the Telegraph
Company to make the proposed amendment, we granted it per-
mission so to do, and overruled the motion to dismiss.    This
was, as we shall undertake now to show, in accord with a rule
of practice which has been uniformly adhered to and consist-
ently applied during a period of more than half a century.

1. Under the procedure which obtained both in England and
in this country at the time the Supreme Court of this State was
organized, all persons affected by the judgment of a trial court,
including securities upon an appeal bond even though they
might not be formal parties to the record, were indispensable

parties to a writ of error sued out to review the judgment; and it was accordingly held by this court that a strict compliance with this rule of practice was imperative. *Dill* v. *Jones*, 2 *Ga.* 79; *Morris* v. *Wiley*, Ibid. 287. In discussing the necessity and reasonableness of such a requirement, Judge Lumpkin, who delivered the opinion filed in the latter case, pointed out what provision was made for cases in which one only of several parties on the losing side might wish to except, saying, in this connection (page 289): "One of several parties [can not] be subjected to the hardship and loss of being deprived of his writ of error because the others refuse to join in it; one may sue out a writ of error in the name of all, and if the others refuse to join in the prosecution, they may be brought before this court and severed at their own request, after which he or they who sued out the writ of error may go on alone. In this manner all inconvenience may be avoided, justice administered, and the harmony and conformity of the record preserved." The right to amend the bill of exceptions by the record, and thus bring before the court necessary plaintiffs not joined in the first instance, was recognized both in the case of *Long* v. *Strickland*, 2 *Ga.* 348, and in that of *Carey* v. *Rice*, Ibid. 408. Such an amendment was allowed in *Beall* v. *Fox*, 4 *Ga.* 403, it appearing from the record in that case that the parties plaintiff thus sought to be introduced were codefendants with the plaintiff in error in the court below.

Then came the practice act of 1847, which wrought no change in the rules of procedure save to provide that thereafter it should not be necessary to join in the writ of error securities on appeal or upon injunction bonds, but that such persons only as were formal parties to the pleadings in the lower court should be considered indispensable parties to a writ of error sued out to review a judgment therein rendered. See *Carey* v. *Giles*, 10 *Ga.* 8, wherein this statute was cited and construed. The court in that case declared it necessary not only to include in the writ of error all essential parties thereto, but to observe the equally important requirement that they be therein joined "in the order in which they stand in the record below." As explanatory of what was meant by the phrase just quoted, and as affording an illustration of how this requirement could and should be met,

it was said (p. 2): "When, therefore, one of two or more defendants against whom a decree has been rendered brings a writ of error to reverse it, it is necessary for him to join his codefendants as plaintiffs in error, and upon the trial they may unite with him and assign error against the decree, or they may sever and be heard in defense of the decree.    And if such plaintiff in error has failed to make his codefendants parties plaintiff to the writ of error, they may be added by motion, without delay or cost, with the same privilege of assigning errors or severing." Commenting upon the act of 1850, which declared that writs of error could be amended in conformity with the record, without delay or cost and as a matter of right, Judge Nisbet remarked (pp. 8–9): "It is useless to talk about the mockery of adding parties here, on motion, without giving them notice to appear. . . So far as these parties are concerned, they have . . very little cause of complaint.    The plaintiff in error now before the court could have used their names and brought them here as parties plaintiff without their consent and without notice.    They are now being made parties upon motion, in a condition very little worse than they would have been in had the plaintiff taken that course.    In neither case has the law provided for notice to them, and in both cases they are presumed to know what are the public laws; to know that under the laws they are liable thus to be made parties; and in both cases their rights are the same; that is, they can assign errors with the primary plaintiff and co-operate with him in procuring the reversal of the judgment below, or they can sever and be heard in support of the judgment.    It is their privilege to elect."    See, also, what was said upon the same line by Bleckley, J., in *McNulty* v. *Pruden*, 62 *Ga.* 138.    In the course of his discussion he observed that if the case "had been brought up by the complainant below, and not by some of the defendants, other rules would apply," for there was a vast difference between introducing proper plaintiffs in error, who were not entitled to notice, and attempting to add by amendment necessary defendants in error who had not been made parties to or served with the bill of exceptions agreeably to statutory provisions which were imperative. For instances where this distinction was drawn and the writ of error was dismissed for want of proper parties defendant in this

court, see *Barksdale* v. *Bunkley*, 26 *Ga.* 398; *Curey* v. *Hitch*, 57 *Ga.* 197; *Bird* v. *Harris*, 63 *Ga.* 433; *Jordan* v. *Kelly*, Ibid. 437; *Brown* v. *Wylie*, 64 *Ga.* 435; *Maynard* v. *Hunnewell*, 65 *Ga.* 281; *Jowers* v. *Baker*, Ibid. 611; *Haines* v. *Clary*, 66 *Ga.* 519; and *Price* v. *Lathrop*, Ibid. 247. In the case last cited, it appeared that an assignee in bankruptcy, who was a necessary party defendant in error, had not been named as such in the bill of exceptions. With a view to meeting a motion to dismiss the writ of error, the plaintiffs offered to amend by making him a coparty with them, but the court refused to allow this to be done, holding: "Such assignee cannot be made a party plaintiff in error with complainants by an amendment to the bill of exceptions instanter, because he was not on the same side of the litigation in the court below, as was the case in 62 *Ga.* 135, and 10 Ib. 1. His interest as well as his position in the court below show him to have been antagonistic to the case made by complainants, and therefore he can not be made a party on the same side of the litigation in this court."

In the year following that in which this decision was rendered, the General Assembly passed what we may term the "saving act." Acts of 1880–81, p. 123. Among other things, it provided for curing by amendment "any imperfection or omission of necessary and proper allegations" in the bill of exceptions which "could be corrected from the record in the case," and declared that no writ of error should be dismissed "on any ground whatever" which could be "removed during the term of the court to which the said writ of error is returnable." Civil Code, §§ 5570, 5567. In express terms, this statute further declared that no dismissal should result simply "because the bill of exceptions sets forth the parties differently from the record, or discloses that some party not interested in sustaining the judgment of the court below had not been served," provided the record shows "clearly who were the respective parties to the litigation in the court below, and the bill of exceptions shows that all who were interested in the case, as presented in the Supreme Court, in sustaining the judgment of the court below had been served." Ibid. § 5562. No change in the then prevailing practice concerning a proper alignment on opposite sides of the respective parties at interest seems, however, to have

been contemplated; nor was any provision made for service of the bill of exceptions upon such parties as, under the procedure which had previously been established, were required to be brought before this court in the capacity of plaintiffs in error. Indeed, this act was essentially one of mercy, not designed to introduce a different system of procedure or to impose any additional burdens upon one suing out a writ of error, but merely to shield him from the pains and penalties which had theretofore been visited upon those who failed to observe certain requirements of the law which this court was bound to enforce. That is to say, the established rules of practice were not dealt a mortal blow, but were merely crippled, by being thus practically declared directory rather than mandatory. But one change therein was introduced which affected the practice as to the manner of joining parties in a writ of error. This related to the requirement that all parties to the record in the trial court should be made parties to the bill of exceptions, which requirement the General Assembly modified to the extent of declaring that "no party shall be considered as interested in the litigation in the Supreme Court who will not be affected by the judgment to be rendered in that particular case, such as sheriffs upon a money rule when the contest is between various claimants of the fund and not between the sheriff and any one of them, or a receiver occupying a similar relation, or a complainant in a bill of interpleader, and other parties occupying similar positions." Civil Code, § 5562.

Recognizing that the act of 1881 went no further than as above indicated in establishing different rules of practice, this court held, in a case arising after the passage of that statute: "Where some of the defendants to a bill in equity except to the overruling of a demurrer to the bill, they need not serve their codefendants with the bill of exceptions." *Mechanics' Bank* v. *Harrison*, 68 *Ga.* 463. It may further be observed that, since that act went into effect, the practice which formerly prevailed as to allowing writs of error to be amended by the record so that proper parties *plaintiff* might be added has also been consistently adhered to and applied in a number of instances. See *Swatts* v. *Spence*, 68 *Ga.* 496, 499; *Sharp* v. *Findley*, 71 *Ga.* 655; *Epping* v. *Aiken*, Ibid. 682; *Fouche* v. *Harrison*, 78 *Ga.*

359, 407; *Culver* v. *Mullally*, 94 *Ga*. 644; *Isbell* v. *Blanchard*, Ibid. 678; *Steele · Lumber Co.* v. *Laurens Lumber Co.*, 98 *Ga*. 329; *Swift* v. *Thomas*, 101 *Ga*. 89; *Bennett* v. *Trust Co.*, 106 *Ga*. 578. Many cases have, indeed, been dismissed for want of necessary parties. *Allen* v. *Cravens*, 68 *Ga*. 554; *Craig* v. *Webb*, 70 *Ga*. 188; *Knox* v. *McCalla*, Ibid. 725; *Cameron* v. *Sheppard*, 71 *Ga*. 781; *Baker* v. *Thompson*, 78 *Ga*. 742; *Anderson* v. *Faw*, 79 *Ga*. 558; *Crosthwait* v. *James*, 95 *Ga*. 570; *Davis* v. *Peel*, 97 *Ga*. 342; *Hunter* v. *Wakefield*, Ibid. 543; *Capers* v. *Kirkpatrick*, 98 *Ga*. 260; *Inman* v. *Estes*, 104 *Ga*. 645; *Stroup* v. *Pruden*, Ibid. 721; *White* v. *Bleckley*, 105 *Ga*. 173; *McConnell* v. *West*, Ibid. 468; *United States Leather Co.* v. *National Bank*, 107 *Ga*. 263; *Papworth* v. *Ryman*, 108 *Ga*. 780; *McCain* v. *Sutlive*, 109 *Ga*. 547; *Tiner* v. *Carter*, 110 *Ga*. 285. But in none of these cases could the fatal omission to include in the writ of error all necessary parties defendant thereto be cured by amendment; for, in view of the doctrine laid down in *Price* v. *Lathrop*, supra, one suing out a bill of exceptions can not properly join with him as a plaintiff in error another litigant who was on the opposite side of the controversy in the court below, and the act of 1881 in terms declares that the provision therein made, that no dismissal shall result merely "because the bill of exceptions sets forth the parties differently from the record," is applicable only in the event all necessary parties defendant have been duly served. Of course, no case will be dismissed for want of service when the parties entitled thereto voluntarily appear before this court, either in person or by attorney, and consent that the case may be heard. Civil Code, § 5547, par. 3; *Craig* v. *Webb*, 70 *Ga*. 188. And reasonable time and opportunity will be afforded a plaintiff in error in order that he may, if possible, procure such consent during the term to which the writ of error is made returnable. *McCain* v. *Sutlive*, cited immediately above. It is, however, obvious that while there is no obstacle in the way of amending a bill of exceptions by the record so as to include therein the names of additional parties defendant, this availeth nothing in the absence of a waiver on their part of due service, as any service upon them thereafter effected would come too late. *Cameron* v. *Sheppard*, 71 *Ga*. 781; *Papworth* v. *Ryman*, 108 *Ga*. 780, and

cases cited.    It is also proper to call attention to the fact that
the right to introduce by amendment even necessary parties
plaintiff is limited to those litigants only who are entitled to
sue out a writ of error, and can not be exercised for the benefit
of others by one not himself injuriously affected by the judg-
ment excepted to.    *Central Railroad* v. *Craig*, 59 *Ga.* 185;
*Healey* v. *Scofield*, 60 *Ga.* 451; *Southwestern Railroad* v. *Craig*,
62 *Ga.* 362; *Swift* v. *Thomas*, 101 *Ga.* 89.

In view of the practice outlined above, it is clear that as the
Railway Company was not a coparty with Mrs. Griffith in
the court below, it did not belong on that side of the case which
she occupied before this court.    Certainly it was not incumbent
upon the Telegraph Company, if it desired to bring here for re-
view the judgment overruling its separate demurrer, to make the
Railway Company a party defendant to the bill of exceptions.
*Jones* v. *Hurst*, 91 *Ga.* 338, citing previous decisions of this
court.    But counsel for Mrs. Griffith contended that a new trial
could not legally be granted as to one only of the joint defend-
ants below, and accordingly argued that, as the Railway Com-
pany was not made a party to the motion therefor or to the pres-
ent writ of error, the case should be dismissed.    This position
is not altogether logical.    If that company was, as insisted, an
indispensable party to the motion, it would simply follow, as a
result of not making it a party, that the Telegraph Company
could not in its bill of exceptions justly complain that the trial
judge committed error in refusing to grant a new trial which
could not lawfully take place, and would have to depend alone
upon its assignment of error touching the overruling of its
demurrer.    That is to say, the mere fact that there might be
no merit in one of its complaints would not justify a dismissal
of its bill of exceptions, if it presented another question prop-
erly raised which could and should be passed upon.    We are,
however, by no means prepared to agree with counsel as to
the correctness of the premise upon which they based their
argument.    Although the action brought by Mrs. Griffith was
against both companies as joint tort feasors, her right to recover
in the case did not depend upon her ability to prove that both
were liable to respond in damages.    She might, before trial,
have voluntarily dismissed her action as to one and proceeded

against the other alone. *City of Atlanta* v. *Anderson*, 90 *Ga.*
481. Or, at any time before verdict, she might, if unable to
prove that both were liable, have disclaimed a right to recover
as to one and insisted upon a verdict against its codefendant.
*Baker* v. *Thompson*, 89 *Ga.* 487. And a verdict such as was
actually rendered, releasing one of the companies but finding
the other liable, could lawfully be returned. *Austin* v. *Appling*,
88 *Ga.* 55, 59, and cases cited. True, if Mrs. Griffith had
wished to file a motion for a new trial with a view to obtaining
another hearing as to the liability of the Railway Company,
which was released by the verdict of the jury, it would have
been necessary for her to make the Telegraph Company a party
respondent. This is so for the reason pointed out in *Hunter* v.
*Wakefield*, 97 *Ga.* 543, 545, viz.: if, in an action like the case
at bar, "brought against several defendants, the plaintiff re-
covers at all, the damages awarded must be for the same amount
as to all of the defendants *found liable*," and therefore, where
a verdict has been found "against some only of several joint
defendants, and the plaintiff moves for a new trial against
those of the defendants as to whom he failed to recover, if
his motion is granted at all the verdict in his favor against
those of the defendants who were found liable must necessarily
be set aside; for unless this be done, there might, upon a sub-
sequent trial, be a finding for the plaintiff for a sum totally
different from that already found, and thus there would result
a recovery in one amount against some of the defendants and
a recovery in quite a different amount as against others of
them." The plaintiff would, however, have as much right af-
ter verdict as he had before or pending the trial to abandon
his case as to some of the defendants; and this being so, it is
evident that if he elected to stand upon his partial victory,
there would be no necessity, in the event the defendants found
liable desired to move for a new trial, for them to join in their
motion such of the defendants as were by the jury absolved
from liability and as against whom the plaintiff, by failing to
to move for a new trial, had voluntarily chosen not to further
press his action. Obviously, where the only logical result of a
trial was to release one of several defendants sued as joint tort
feasors, a new trial may properly be granted at the instance of

those against whom a recovery was had, without disturbing the righteous finding of the jury as to the one whom they discharged.  *Fulton Co. St. R. R. Co.* v. *McConnell,* 87 *Ga.* 756. This fully disposes of the motion to dismiss.

It remains only to briefly notice a point raised by the Rail-. way Company, which appeared before this court through its attorney and strenuously resisted being made a party to the case on the ground that it was in no wise interested in the outcome of the controversy here presented.  In this connection, counsel confidently made the assertion that his client was not even a proper, much less a necessary, plaintiff in error.  We did not at the time, nor do we now concur in this view.  Under the facts disclosed by the record, it is, indeed, manifest that the Railway Company had itself no right to sue out the writ of error.  *Braswell* v. *Mortgage Co.,* 110 *Ga.* 30; *Collier* v. *Hyatt,* Id. 317.  But as the bill of exceptions was filed by a party entitled to except to the rulings therein complained of, it by no means follows that the company just mentioned was not at least a *proper* party plaintiff.  As has been seen, the rule of force prior to the passage of the act of 1881 was, that all parties to the record below were not only proper but necessary parties to a writ of error.  That act, in providing against the dismissal in this court of bills of exceptions for want of necessary parties, went no further than to declare that, in determining who really were indispensable parties thereto, "no party shall be considered as interested in the litigation in the Supreme Court who will not be affected by the judgment to be rendered in that particular case, such as" mere stakeholders and other purely nominal parties to the controversy in the court below.  It can not, therefore, be said that any formal party to the record in the trial court is not still to be regarded a proper party to a bill of exceptions, irrespective of the question whether he be an essential party thereto or not.  Counsel based his argument upon the proposition that his client had been absolved from liability by the jury, whose finding was binding and conclusive, the same never having been set aside; but the record before us, by which alone we are to be governed, is silent as to whether or not any steps have been taken by Mrs. Griffith to further press her action as against the Railway Com-

pany in the event another trial should result from the judgment rendered by this court in the present case. Accordingly, we undertake merely to say that company was a proper, though perhaps not indispensable, party plaintiff. The order passed whereby it was introduced as a party satisfied the demands of the Telegraph Company, fully met and overcame the motion to dismiss urged by Mrs. Griffith, and inflicted no hardship upon the Railway Company; for, if it really has no further interest in the litigation, its rights in the premises can not possibly be injuriously affected by the judgment which we render. This being so, reflection confirms us in the belief that this order was not improvidently granted, but that it provided quite a satisfactory solution of the whole difficulty presented.

2. The case made by the petition filed by Mrs. Griffith was, in brief, as follows: The Telegraph Company maintains in the city of Augusta and the village of Summerville a system of poles and wires extending through various streets upon which the Railway Company has likewise erected a similar system of poles and wires used in connection with its business. At some places the wires of the Telegraph Company, which are strung on poles which are higher than those used by the other company, cross the wires of that company, while at other points the wires connected with the two systems run parallel with each other on the same streets. The wires of the Railway Company are heavily charged with currents of electricity "sufficiently powerful to do great bodily harm." On or about the 2d day of December, 1896, there was a fall of sleet and snow, and "the wires belonging to and controlled by the said defendants were each and all heavily weighted by said snow and sleet." As a result "thereof, the wires of the said defendants came in contact with each other at sundry points and places in the city of Augusta and in the village of Summerville," and "by reason of such contact, the powerful currents in the wires of the Augusta Railway & Electric Company were conducted to and into the wires belonging to and controlled by the Western Union Telegraph Company," of which fact "both of the defendants had knowledge." Because of "said contact, the wires of the Western Union Telegraph Company became dangerous to persons and property touching or being touched by the same, [and] both of said de-

fendants had knowledge of said danger." The wires of the two companies were thus in contact "at and near the intersection of Walton way and Telfair street in the village of Summerville, *and at divers other places in said village and city,*" and this was known by both companies. On the date above mentioned, a rotten and unsound pole belonging to the Telegraph Company, situated "in the yard of the Bon Air Hotel," broke and fell across a roadway leading to that hotel, carrying with it the wires which had been strung upon it. "Said pole was negligently allowed to remain upon the ground with the wires upon and across said roadway for a long space of time, to wit 13 days," notwithstanding "the said defendants, and each of them, had notice of the fact that said pole had fallen and that said wires were across said roadway," and although both "knew that the said wires so, as aforesaid, upon the ground were dangerous and likely to produce injury to any person or thing passing along said roadway." On the 15th day of December, "petitioner had occasion to visit the Bon Air Hotel on business" and was driven thither in a vehicle through the Walton way entrance to that hotel. Neither she nor the driver knew of the dangerous condition of the wires across the roadway leading to the Telfair street entrance, and in attempting to return by that route one of the horses drawing the vehicle in which she was riding stepped upon one of the wires and received a violent shock which threw it to the ground. In falling, the horse turned or tilted the vehicle to such an extent that petitioner, who was greatly alarmed and was trying to alight, either fell or was thrown to the ground. She not only sustained serious injuries by reason of this fall, but also "received a violent burn from the electric current" with which the wires upon the ground were charged. In addition to other items of damage specifically alleged, she was "forced to incur an expense of $.... for medical attention and nursing."

One of the defendants in the court below, the Telegraph Company, met the plaintiff's petition with a general demurrer, and also demurred specially thereto on the ground that there was a misjoinder of parties defendant therein. We now rule specifically, as was practically decided when the case was here at the March term, 1898 (104 Ga. 62), that the plaintiff set forth in her petition a cause of action, and properly joined

therein as joint tort feasors the two corporations through whose alleged negligence she was injured. By special demurrer the Telegraph Company called upon Mrs. Griffith to allege with more particularity at what points its wires ran parallel with, and at what points they crossed over, those of the Railway Company. We have no hesitation in holding that in the respects indicated the petition was even more specific in its allegations than was necessary. There was no averment that either of the defendants was negligent in that it improperly constructed its system of wires and poles, and the sole purpose of the pleader evidently was to bring out the fact, by way of inducement merely, that the two systems were in close proximity one with the other at different points in the city and village. It was, however, the right of the Telegraph Company to demand, as it did in its special demurrer, that it be put upon notice as to where were the "divers other places in said village and city," besides that at the intersection of Walton way and Telfair street, at which the plaintiff expected to prove that the company had negligently allowed its wires to remain in contact with those of the Railway Company. Under the circumstances alleged, it was a distinct and unpardonable act of negligence to permit the dangerous agency to continue at each of the "divers other places" referred to ; and under this loose and flexible allegation the plaintiff would be entitled, if not called upon to amend her pleadings in this particular, to introduce evidence concerning a contact at any point within the limits of the city of Augusta or those of the village of Summerville. This was altogether too much latitude, and gave the plaintiff an opportunity to place the Telegraph Company at a great disadvantage in endeavoring to make out its defense. If the plaintiff really knew, as she undertook to aver in her petition, that there were "divers other places" where the wires of the two companies were in contact, it would have been easy enough for her to comply with the reasonable demand made upon her to state specifically where such places were. If she did not, as a matter of fact, know of or expect to prove a contact at a point other than the intersection of the two streets mentioned by name, she should have amended her petition by striking therefrom all reference to such "divers other places;"

for she had no right to expect to be allowed to go to trial in the hope of being able to prove by mere chance something which she was unable even to allege with any degree of certainty and particularity. Section 5048 of the Civil Code expressly declares that "Special defects or omissions in the petition may always be taken advantage of by demurrer, and unless cured by amendment, the petition shall be dismissed." The petition under consideration was not free from "defects or omissions" calling for the prescribed remedy. Indeed, the plaintiff's disregard of the positive requirements of the law as to good pleading is so palpable as to suggest, by way of analogy, a violation of that provision of our piscatory laws now embodied in section 585 of the Penal Code, to the effect that while a sportsman is at liberty to angle with hook and line, he can not lawfully go after his intended victims with a drag-net. In a brief filed by her counsel, the case of Kraatz v. Brush Electric Light Co., 82 Mich. 457, is cited and relied on in support of the contention that: "It is not necessary to prove the point of contact; it is impossible to have a tracing or chasing of lightning." There, the evidence disclosed that Kraatz received a shock from wires which "should have been, and were supposed to be, at the time" he was working upon an electric lamp, "dead wires, or wires not charged with electricity." The wires connected with a different circuit were then charged with electricity, and there was positive proof that "there were crosses of these dead and live wires observed on the very day of the injury to plaintiff." The only question presented for decision in this connection was whether the jury were warranted in finding that the injury resulted from one of these contacts shown to exist, or was the result of negligence on the part of some employee of the company or the act of a stranger in turning the current upon the wires of the circuit upon which the plaintiff was engaged at work. The court stated its conclusion to be that the most plausible theory presented by the evidence was that there was a "transfer of electricity from some live wire on" one of the circuits "to some dead wire on" the other circuit, "at some of the crosses of these wires;" and that the verdict ought to stand notwithstanding the plaintiff did not prove with mathematical certainty at what precise spot such

transfer took place. No question was decided concerning the legal sufficiency of the plaintiff's pleadings in this respect.

The Telegraph Company also sought to compel Mrs. Griffith, to set forth the manner in which notice was brought home to it that its wires were in contact with those of the other defendant. We think her allegation that both of the defendant companies had knowledge of the facts stated in regard to this matter was amply sufficient in point of detail. An individual would certainly not be entitled to call upon the plaintiff to exhibit to him, in advance of the trial, the particular evidence by which she expected to show such knowledge on his part. A corporation stands upon no better footing; for, theoretically at least, it has an equally good opportunity to know whether it did or did not know facts alleged to have come within its knowledge, and therefore is prepared to meet such an allegation with all the evidence at its command.

3. Two distinct points of objection were raised by the Telegraph Company to the allegation contained in the plaintiff's petition concerning the expense incurred by her for medical attention and nursing. One of these objections is presented by a speaking demurrer, wherein the company advances the argument that as it appears "that Mrs. Griffith is a married woman, and it does not appear but what her husband is living," she can not recover such expenses, as the same should have been borne by him. We will dismiss this point with the suggestion that it should have been raised in the company's answer as matter of defense. Had the demurrer specifically called upon Mrs. Griffith to state whether or not she had a living husband, an altogether different question would be presented. The other objection should have been met by an appropriate amendment, for it was directed against, and clearly pointed out, the omission of the plaintiff to allege the amount she expended for medical attention and nursing. It is possible that her counsel looked upon this point as too trivial to require serious consideration, and would regard it a great hardship were we to reverse the judgment simply because a proper amendment to cure this defect was not offered. Yet we are by no means prepared to say we would be justified, in view of the section of the Civil Code last above cited, in holding that were this the only objection to the

petition which was well taken, a reversal of the judgment over-ruling the demurrer would not be demanded. We do not so rule, but take this occasion to emphasize the fact that the salutary rules of practice which require good pleading have not, as yet, been altogether abolished in this State. As furnishing an instance of what anomalous results may sometimes flow from ignoring what appear to be purely technical objections. urged against pleadings which are defective in matter of form merely, we refer to the case of *Mayor of Eastman* v. *Cameron,* 111 *Ga.* 110. The demurrer with which we are now called upon to deal ought certainly to have been sustained.

*Judgment reversed. All the Justices concurring.*