## MATTOX, sheriff, *v.* BARRY.

1. In a money-rule proceeding against a sheriff to require him to pay over funds in his hands to a plaintiff in fi. fa., issued upon a judgment rendered in an attachment case, he filed an answer admitting that he had a fund derived from a sale of property under the execution, but also set up that the holders of two other fi. fas. had placed them in his hands and demanded their satisfaction out of the fund, the amount of which was insufficient to discharge the fi. fa. first mentioned, and praying only for direction as to how he should apply the fund. The holders of the two fi. fas. last mentioned in the sheriff's answer appeared by counsel and participated in the trial; and by consent of all parties the case was tried by the judge upon an agreed statement of facts, and resulted in a judgment which ordered the sheriff to apply the fund to the payment of the costs of court in the attachment case and the money-rule proceeding and deliver the balance thereof to the attorneys for the plaintiff in the attachment case. *Held,* that the judgment was responsive to the prayer of the sheriff, and all of the contestants over the fund, being parties to the suit, were bound by the judgment; and the sheriff had no cause for complaint that the fund was awarded to one of the contestants rather than to the others.
2. The losing contestants for the fund in the court below having omitted to except to the judgment, they could not have their names added by amendment as plaintiffs in error in the Supreme Court to the bill of exceptions sued out by the sheriff, so as to proceed, not in the interest of the sheriff, but in the interest of themselves to have the judgment of the lower court reversed.

APRIL 14, 1911.

Money rule. Before Judge Worrill. Randolph superior court. June 7, 1910.

On November 8th, 1909, in the superior court of Randolph county C. F. Barry recovered judgment in an attachment case against George L. Barry, and on the same day caused execution to issue and to be entered on the general execution docket. On November 9th, 1909, the sheriff levied it upon certain property of the defendant, which was regularly sold on December 7th, 1909. After the sale, on motion of the plaintiff in fi. fa., a rule was issued against the sheriff, requiring him to show cause why he should not pay the funds derived from the sale of the property to the plaintiff in fi. fa. In his answer the sheriff set up that a justice-court fi. fa. issued on the 23rd day of March, 1893, in favor of W. R. Curry against George L. Barry, and transferred to E. R. King on the 11th day of January, 1909, had been placed in his hands and levied upon the property, and that the money in his hands was produced by a sale of the property under both executions, and also that be-

fore the sale still another justice-court fi. fa. in favor of Rawls, Perry & Webb against George L. Barry was placed in his hands with instructions that the same constituted a lien upon the proceeds of the sale of the property, the last fi. fa. having been issued on November 20th, 1892. Having thus answered, the sheriff prayed the court to be instructed "how to distribute said money arising from the sale of said property, or to whom same shall be paid, whether to the plaintiffs in the said justice-court executions, or to the plaintiffs in this case." The rule against the sheriff was made returnable May 21st, 1910. Service was acknowledged May 14th, 1910, by the sheriff individually, and also by attorneys at law for E. R. King, and for Rawls, Perry & Webb. On the same day an order was signed by the judge reciting that by agreement "of all parties to this proceeding" it is ordered that the questions presented therein be heard and passed upon by the judge of said court at chambers, on May 21st, 1910, at Cuthbert, Ga. This order was consented to by the attorneys for C. F. Barry, the plaintiff in the attachment execution, who instituted the money rule against the sheriff, and also by the attorneys for E. R. King, and attorneys for Rawls, Perry & Webb. On the day set for the hearing the case was submitted on an agreed statement of facts, which was in conformity with all that is above stated, and showed the following additional facts: The amount realized from the sale was insufficient to discharge the attachment execution in favor of C. F. Barry. The justice-court fi. fa. issued March 23d, 1893, in favor of W. R. Curry, was entered on the general execution docket on March 29th, 1893, but never on the execution docket of the superior court, and contained an endorsement whereby, on January 11th, 1909, the plaintiff assigned it to E. R. King. It also contained an entry of levy by the sheriff, dated November 2d, 1909. The other justice-court fi. fa. which was issued November 24th, 1892, in favor of Rawls, Perry & Webb, was entered on the general execution docket on December 9th, 1892, but never on the execution docket of the superior court. The original was lost, and an alias was issued December 7th, 1909. The defendant in fi. fa. left the State of Georgia in 1894, or 1895, and has not returned to this State to reside since that time. Upon this statement of facts the judge ordered that "all sums of costs accruing in said attachment case of C. F. Barry against Geo. L. Barry, as well as the costs on this rule proceeding, be first paid out of

the fund admitted by the sheriff in his answer to be in his hands, and the balance paid over to" the attorneys for the plaintiff in attachment, "to be credited on his execution and judgment against Geo. L. Barry." The sheriff excepted to the order, on the ground that the court erred "in awarding said money to C. F. Barry, and in passing said order awarding said money to C. F. Barry, and in not awarding it to the plaintiffs in the justice-court executions in the hands of the sheriff."

Glessner & Park and King & Castellow, for plaintiff in error.

Smith & Miller, contra.

ATKINSON, J. 1. The assignments of error do not afford grounds for reversing the judgment at the instance of the sheriff, the only plaintiff in error who filed exceptions to the ruling of the court. The case was a money-rule proceeding against the sheriff, and by consent was tried by the judge upon the pleadings and upon an agreed statement of facts. According to his answer and only prayer, the sheriff had no interest further than to obtain a judgment protecting him in the matter of paying out the fund admitted to be in his hands, and invoked no judgment other than direction from the court on that subject. In money-rule cases where a fund is in the hands of the sheriff and is contended for by different persons, ordinarily all persons having claims to the fund will be bound by the judgment if they have notice of the proceedings and are afforded an opportunity to assert their claims. Foster v. Rutherford, 20 Ga. 668; Berrie v. Smith, 97 Ga. 782 (25 S. E. 757). The holders of the justice-court fi. fas. put them in the hands of the sheriff, and in effect notified him to satisfy them out of the fund in controversy, thus in part bringing about the necessity for the sheriff to ask direction from the court. After the rule was issued against the sheriff, the attorneys at law for the holders of the justice-court fi. fas. acknowledged service thereof, and entered into the consent for the trial by the judge and the agreement as to the facts, thereby participating in the trial of the case. Under these circumstances the holders of the justice-court fi. fas., as well as the plaintiff in attachment, would be bound by any judgment rendered in the case. With all of the parties at interest, so far as the record discloses, participating in the trial, a judgment was rendered which in effect gave the sheriff full direction as to the application of the fund, and afforded him complete protection in paying it out as or-

dered. The judgment was responsive to his only prayer, afforded him all that he sought, and he was no party to ask that it be set aside. In this connection see *Western Union Telegraph Co.* v. *Griffith,* 111 *Ga.* 558 (36 S. E. 859) ; *Orr* v. *Webb,* 112 *Ga.* 810 (38 S. E. 98).

2. After the case was brought to the Supreme Court by the bill of exceptions filed by the sheriff, the holders of the justice-court fi. fas. sought to have it amended by having their names inserted as parties plaintiff in error, and to have the judgment of the trial court reversed in their interest. As indicated in the first division, if the judgment should be reversed at all, it would not be in the interest of the sheriff, as he had no interest in having it reversed. It is not apparent why they should be thus allowed to proceed. If they were dissatisfied with the judgment of the trial court, they should have filed appropriate exceptions within the time allowed by law. Several reasons exist why, after omitting to do so, they should not, after the expiration of the time for filing exceptions, be heard as to their separate interests in the Supreme Court merely by annexing themselves, under the law of amendments, to the bill of exceptions filed by the sheriff. This is not a case where they might have been added by amendment as necessary parties in order to afford relief to the sheriff, the only plaintiff in error in the original bill of exceptions. . Ordinarily, in making parties plaintiff in error by amendment, the new parties proposed should have been on the same side of the controversy in the court below with the plaintiff in error. *Western Union Telegraph Co.* v. *Griffith,* supra. But such was not the case now before us. The sheriff was a party all to himself, not on the side of the holders of the justice-court fi. fas., nor on that of the plaintiff in attachment, to whom the money was awarded. He did not purport to appear for either of them, nor was he allied with either. While, under certain conditions, bills of exceptions may be amended by adding parties plaintiff in error, this does not extend so far as to authorize a losing party on the trial of a controversy in the court below, who could have excepted but did not, afterwards to have his name added by amendment to a bill of exceptions sued out by a different party not on the same side of the controversy with him, in order that he may proceed in his own interest to have the judgment reversed.     *Judgment affirmed. All the Justices concur.*