## HANSFORD *v.* FREEMAN.

1. Where a promissory note was signed and delivered by the maker to the payee's agent, upon an express understanding and agreement that the latter was not to deliver the note to his principal except upon the happening of a certain event, but was to hold the note "for both parties" until it could be ascertained whether or not this event would happen; and where in fact it did not happen at all, and the agent, in violation of the understanding and agreement above mentioned, delivered the note to his prin-

cipal, such delivery was not effective or binding upon the maker. Under these circumstances, the agent was, as to the matter of delivery, the mutual agent of both the other parties.

2. While mere ignorance of the law will not, ordinarily, relieve a party from the performance of his written contract where he signs and delivers the same with full knowledge of all the facts, yet where, on account of misplaced confidence and because of artifice and deception fraudulently practiced upon him by the opposite party, a vital and material part of the contract was omitted from the writing, which purported to express the whole contract, and the party overreached was fraudulently led to believe that the contract as written was in effect the same as if the omitted portion had been inserted, equity will decree a reformation.

3. Accordingly, where an action upon such contract is brought in the superior court, the defendant may set up the facts above recited as a defense, and upon proof of the same, may obtain appropriate relief.

4. The court erred in sustaining the plaintiff's demurrer to so much of the defendant's plea as alleged in his defense the matters referred to in the preceding notes.

May 4, 1896. Argued at the last term.

Complaint on notes.  Before Judge Reese.  Oglethorpe superior court.  April term, 1895.

Annie N. Freeman sued Benjamin Hansford on two promissory notes dated September 25, 1893, one for $500 due December 1, 1893, the other for $1,000 due January 1, 1894, alleged to have been given for the purchase money of 148 acres of land more or less (described), she having made him a bond for titles.  He filed a plea which, upon demurrer, was stricken as setting forth no legal defence. This plea makes the following allegations:  He was approached to buy the land, and conditionally bargained therefor as follows:  Plaintiff, through her alleged agent J. H. Hunter, was undertaking to sell the property, and approached defendant to buy.  Defendant expressed a desire to buy, but indicated that he did not have the money, and told plaintiff he could not and would not buy unless he could borrow the money from Joseph McWhorter, with whom defendant had often dealt and from whom he

thought he could procure the loan for as much as the stipulated purchase price, and give him time for its repayment. After some negotiation it was agreed between said agent and defendant, that plaintiff would bargain the land on the terms stated, and that if defendant could not procure the loan of said sum from McWhorter the sale was to be of no effect and inoperative. Hunter then suggested that they would enter into a written contract touching the purchase. Defendant declined to buy or bargain for the land unless it was distinctly agreed that the same was entirely dependent upon his procuring the loan above indicated. This was agreed to and distinctly understood by both parties; and upon the suggestion of Hunter, defendant and Hunter called upon Hargrove, a magistrate, to draw the agreement; the agreement was stated to Hargrove as above, and that all of said agreement was to be incorporated in said writing between the parties. Hargrove proceeded to draft the papers, and drafted the notes and bond for titles. After said contract was written and before defendant signed it he asked if it was all right, and Hunter said it was, that the clause reciting that the note and bond for titles was dependent upon defendant procuring a loan for said sum, as above stated, was left out of the contract because it was not necessary to insert it, that he would hold the notes for both parties, without delivery, until defendant could ascertain whether he could borrow the money as agreed, and that if he could not do so all of said writings would be inoperative. Being almost entirely illiterate and relying in confidence upon Hunter, defendant signed the notes. Said clause of the agreement defeating the operation of the writings was left out of the same at the time of its execution, because of the false representation of Hunter who was engaged in making the contract, and because of the fraud thus practiced upon defendant and his mistake in misplacing his confidence in Hunter. Said representation of Hunter, which induced the contract as it was written and

signed, was false and fraudulent, and was intended at the time to deceive defendant, and if he had not thus misplaced his confidence he would not have signed the notes. If Hunter, instead of holding the notes until he could ascertain and report as to his ability to procure the loan as agreed upon, delivered the same, they were wrongfully and fraudulently delivered and are of no effect. At the first opportunity defendant attempted to procure the loan as above indicated, and could not do so. He thereupon notified Hunter of his failure to procure it, and offered at once to deliver up the bond and surrender all claim to the premises, or the rents etc. thereof, which he has constantly offered and is willing to do. Hunter, in violation of his promise and agreement, and in spite of his representation so to do, refuses to so deliver up the notes and take possession of the premises. Defendant prays, that the notes be reformed, as alleged herein, so as to speak the truth and contain all the stipulations of the parties, and that the notes and bond for titles be thereupon delivered up and cancelled, and that the land, with its rents, etc., be decreed to be the property of Hunter.

*Hamilton McWhorter*, for plaintiff in error.
*William M. Howard*, contra.

ATKINSON, Justice.

1. The delivery of a promissory note to the payee, or one authorized by law to receive it for him, is essential to its binding force as an obligation to pay upon the part of the maker. By delivery is to be understood, not the mere manual tradition of the paper by the maker to another, but such a delivery accompanied with a present purpose to invest the payee with the right, upon its maturity, to demand its payment. The plea, therefore, in the present case, which set up a non-delivery of the paper sued upon, was a good defense to this action. It alleged that the agent of the payee received it with the understanding

that he was to hold it for delivery until the happening of a particular event. If that event did not transpire, it was not to be delivered at all. The plea alleged that the event upon which its delivery was made dependent had never occurred, and that notwithstanding this, the agent of the payee had delivered the paper to her. Such a delivery was not effective to charge the alleged maker with its payment. The agent of the payee, as the mere custodian of the paper, was the agent of both parties, and inasmuch as he had no authority to deliver it, the payee, in consequence of a delivery by him, acquired no right to enforce it. It is no contradiction of a written agreement, which does not of itself purport to have been delivered, to assert its non-delivery, and, therefore, parol evidence is admissible to disprove the fact of delivery.

2, 3. The maxim *"ignorantia legis non excusat"* cannot be literally applied to all the varied engagements into which men enter in the course of their ordinary business relations with each other. Ordinarily, mere ignorance of the law is not an excuse such as will relieve a man from the obligation of a written contract into which he enters, and which he deliberately delivers with a purpose to bind himself; yet, courts of equity do not hesitate to relieve against the consequences of one's ignorance, where such ignorance has been supplemented by artful practices of the adverse party, through and by means of which the confidence of the ignorant has been obtained and betrayed to their prejudice. The purpose of the defendant's equitable plea filed in this case was not to enable him to introduce parol evidence to vary the terms of a written engagement into which he had deliberately entered, but its purpose was to expose the fraudulent means by which his assent to the terms of the agreement were improperly obtained, to secure a reformation of the written contract, in order that it might conform to the real facts of the case, and express the transaction in accordance with the real agreement and

understanding between the parties. The ignorance of the maker was a potential factor in enabling the agent of the payee to perpetrate the fraud upon him, by which the payee now seeks to profit. It made the maker an easy mark for the shafts of this crafty, skillful archer. If the statements of the defendant's plea be true, and thus they must be taken upon demurrer, the agent of the payee perpetrated a gross, unconscionable fraud upon him, and the courts, under the steady current of decisions rendered, will give him the opportunity to reform the alleged agreement, in order that it may be made to speak the truth. One of the cases which states most satisfactorily the principle upon which the reformation of contracts is allowable is that of *The Liverpool etc. Insurance Co.* v. *Morris,* 79 *Ga.* 666. Under the principle in that decision, the plea in the present case should not have been stricken.

4. The court erred in striking the defendant's plea, and in overruling his motion for a new trial; and a new trial is accordingly ordered. *Judgment reversed.*