## 1395.   HEITMANN *et al. v.* COMMERCIAL BANK OF SAVANNAH *et al.*

1. Where nine defendants are sued jointly as makers of one contract, and three of them file an answer which is stricken on general demurrer, and thereafter one judgment is rendered against all of the defendants, and four days after its rendition a fourth defendant appears for the first time and moves the court to open the judgment, for the purpose of allowing him to demur and plead, the three-defendants whose answer was stricken and the one defendant whose motion to open the judgment was refused may join in one bill of exceptions to this court, excepting to the one final judgment and. to the other rulings antecedent and subsequent thereto.

(*a*)   It is immaterial in such a case that every plaintiff in error is not connected with or was not affected by every order or judgment to which exception is taken in the bill of exceptions.

2. Where parties have reduced a contract to writing, the written contract can not be altered, varied, or contradicted by parol evidence of prior or contemporaneous agreements about matters covered' in the written contract.

3. A written document may, by parol or other extrinsic evidence, be shown not to be a contract at all, because of the non-performance of a condition precedent as to which the writing is silent. Accordingly, it may be shown by parol or other extrinsic evidence that the writing is not a valid or enforceable legal obligation because it does not possess finality of utterance as a completed, all-comprehensive, and presently operative embodiment of the entire agreement of the contracting parties.

4. There .is a plain difference between allowing proof, by parol or other extrinsic evidence, of the non-performance of a condition precedent as to which the writing is silent, and allowing such proof of the non-performance of a condition stated in the writing to have been performed, or to have been agreed upon as unnecessary to the final utterance of the writing as a presently operative contract.

5. If the writing, as agreed upon and signed, specifically states that upon the performance of a certain condition, or the happening of a certain contingency, it shall immediately become operative as a completed contract, and that after that time nothing shall remain to be done by either party preliminary to the final utterance of the writing as the embodiment of the entire agreement of the parties, proof by parol or other extrinsic evidence of conditions precedent not mentioned in the writing would violate the parol-evidence rule.

(*a*)   If the writing, as agreed upon and signed, contains a stipulation that it is not to be complete or binding as a contract until it is signed' by a certain number of persons named therein, and that these and these only are to be signatory parties thereto, it would be illegal to allow extrinsic evidence of a condition precedent that other signatures were to be obtained preliminary to the final utterance of the contract as a completed legal act.

6. Under the letter and the note in this case, construed together as making one contract, it would be incompetent to show by parol evidence that the

contract was not to be binding or complete until signed by all the old indorsers of the original note referred to in the letter, since the letter negatives the necessity for the happening of that contingency or the performance of that as a condition precedent.

(a)   Since, however, there were thirteen old indorsers, only·nine of whom had signed the foregoing contract, a plea setting up the parol condition precedent, that neither the letter nor the note was to be complete or binding until one additional indorser had signed them, does not contradict either the letter or the note, which together are consistent with the idea that any number less than all of the original indorsers were to sign them.

7.   The rule of the common law that there could be no delivery in escrow of a deed to the grantee is still of force in this State, but it has no application to ordinary simple contracts in writing, especially those not reciting delivery.

8.   Performance of a condition precedent may be waived, or the party for whose benefit it operates may be estopped from complaining of its nonperformance.

9.   The judge of the city court of Savannah has a discretion to open defaults during the term at which entered, and, in exercising this discretion, may require the payment of costs or not, as he sees fit.

10.   A defendant in the city court of Savannah who has idly slept until after final judgment has been rendered against him by default can not, even during the same term, without giving excuse for his non-appearance at an earlier date, demand as a matter of absolute right that, on the payment by him of the costs, the judgment be opened for the purpose of allowing him to make his defense.

Complaint, from city court of Savannah—Judge Freeman. August 4, 31, 1908.

Argued November 5, 1908.—Decided July 31, 1909.

Rehearing September 24,—Decided September 28, 1909.

The Commercial Bank of Savannah sued O'Connell, Tietjen, Goette, Fetzer, Manning, Heitmann, Whatley, Knight, and Koneman, setting up its cause of action in two counts. The first count proceeded against O'Connell as maker, and the other defendants as sureties, on the following promissory note: "$15,000.00. Savannah, Ga., Feb. 7, 1908. Four months after date I promise to pay to the order of the Commerical Bank fifteen thousand dollars, with interest from January 1, 1908, at 7 per cent. per annum, at any bank in Savannah, Ga. Value received." O'Connell signed apparently as a maker, while the others signed apparently as indorsers. In the second count it is alleged that all of the parties whose names appear on the note "signed their names to the said note before the same was delivered to your petitioner, with the intention of binding themselves to pay the amount therein named

with interest to your petitioner; and, after so signing their names, they delivered the said note to your petitioner in payment of an indebtedness of theirs to your petitioner, and for a consideration paid them by your petitioner, as per a letter written by them to your petitioner dated February 7, 1908, a copy of which is hereto attached, and they received from your petitioner the consideration mentioned in the said letter and delivered the said note with their names thereon to your petitioner as makers, and with the intention and for the purpose of making themselves liable to your petitioner upon the said note as makers thereof." The letter to which reference is made is as follows: "Savannah, Ga., February 7, 1908. To the Commercial Bank, City. Gentlemen: In reference to the security notes given by Mr. G. B. Whatley to your bank and which were indorsed by directors of the Sand Lime Brick Company, we beg to state that we have been unable to get all the old indorsers to indorse a new paper, and we therefore request you to accept the note indorsed by us and enclosed herewith, in payment of the old notes, and turn over the same to us so that we can bring suit to determine the liability of all the indorsers thereon." The names appended to the letter are the same as those appended to the note, and the same as those of the original defendants in the court below.

The only defendants who appeared in any way before final judgment were Heitmann, Goette, Manning, and Knight. Goette having died pending the action, the suit as to him was voluntarily discontinued without objection from the other defendants. The three above-named defendants filed in due time an answer, in which the jurisdiction of the court was admitted, as was also the fact that they executed the note sued on as indorsers, that the plaintiff bank was the lawful holder thereof and had duly protested it for non-payment, but each and every other allegation of each and every other paragraph of the petition was denied. This answer further set up, "that heretofore (the exact date whereof defendants can not say) they executed as indorsers a note payable to the plaintiff for the sum mentioned in the plaintiff's petition, to-wit $15,000; that it was understood between plaintiffs and these defendants that they were not accommodation indorsers or sureties upon said notes, but indorsers pure and simple, neither of defendants receiving any consideration therefrom. Plaintiff is a char-

tered bank, and, when said note became due and was not paid, it failed and neglected to protest said note; whereby the indorsers upon the same were released. In addition to the parties defendant hereto, H. H. Peeples, J. S. Howkins, Henry Henkin, and E. M. O'Brien were indorsers upon said note. After said note became due, plaintiff, well knowing that these defendants were released by reason of its failure to protest said notes, undertook to procure defendants to indorse the renewal of said notes. These defendants agreed to and indorsed a renewal, upon the condition well understood by plaintiff that each of the indorsers on the old notes would indorse the new one, and that their said indorsement was not to be effective or binding unless each of said indorsers indorsed the same. Three of said original indorsers, to wit, E. M. O'Brien, J. S. Howkins, and Henry W. Henkin, without the knowledge of these defendants, failed and refused to indorse said renewal. Plaintiff, instead of cancelling said note, kept the same, and the note was renewed several times, these defendants at all times believing that all of the original indorsers were indorsing the renewal notes, and plaintiff knowing at all times that they had not indorsed and were not indorsing the renewals, and concealing these facts from these defendants. On or about the 7th day of February, 1908, these defendants learned for the first time that E. M. O'Brien, Henry Henkin, and J. S. Howkins had not indorsed the first or succeeding renewal notes, and plaintiff requested defendants to sign the letter attached as an exhibit to plaintiff's petition and the renewal note attached to said petition. Defendants signed said letter and said note upon the distinct understanding and agreement that plaintiff should procure the indorsement thereon of each of the indorsers on the renewal notes, and plaintiff accepted their signatures to said letter and indorsements on said note on the condition and distinct understanding that it was to procure the indorsement of each of said indorsers, including H. H. Peeples, and that said indorsement should not be binding unless such complete indorsement should be obtained. H. H. Peeples refused and failed to indorse said notes. Plaintiff did not advise defendants of this. It kept said note and, when payment was refused at maturity, protested the same. Defendants say that said note was an incomplete paper, and defendants were not bound as indorsers or as sureties or in any manner whatsoever; that they had never become liable upon said notes or

bound to pay the same, and that they did not promise plaintiff that the sums named in said petition or any other sums should be paid, their indorsement having been conditional and the conditions having never been complied with." Pending the argument on a motion to strike the foregoing answer, on the ground that it set forth no sufficient legal defense, the defendants offered the following amendment thereto: "That the preparation of the note sued upon and the letter attached to the petition was plaintiff's undertaking; that it undertook to procure said papers for its own profit and benefit; that these defendants signed said note and said letter on the distinct understanding and condition, understood and assented to by plaintiff, that neither the letter nor the note was to be complete and binding until H. H. Peeples had signed the letter and signed the note as indorser; that plaintiff procured the signature and indorsement of all the parties whose signature and indorsement it undertook to procure, except that of H. H. Peeples. It did not procure his signature and indorsement as it had expressly agreed to do; and because of its failure to comply with this condition precedent, neither the note nor the letter ever became effective or binding." The court refused to allow the amendment, and granted a motion striking the answer, on the ground that no legal defense was set forth therein. This is the first assignment of error in the bill of exceptions.

Thereafter during the same term, which was the first term after the suit was filed, the court rendered one judgment against all the defendants for the full amount sued for. Four days after this judgment was rendered, the defendant Fetzer came into court for the first time and moved the court to open the judgment which had been rendered and allow him to demur and plead. He offered to pay the costs, but gave no reason for his failure to appear earlier. The court overruled the motion, and Fetzer assigns error thereon, also excepting to the judgment rendered four days prior thereto. The answer which he offered to file was the same as that which had been filed by the other defendants and stricken on demurrer.

*Osborne & Lawrence,* for plaintiffs in error.

*U. H. McLaws, Adams & Adams, G. B. Whatley, J. R. Cain,* contra.

RUSSELL, J.   (After stating the foregoing facts.)

1. The defendant in error has moved to dismiss the bill of ex-

ceptions, on the ground that by one bill of exceptions the plaintiffs in error undertake to bring up separate and distinct judgments in which they are not jointly interested, to wit: the judgment striking the answer of Heitmann, Manning, and Knight, with which the plaintiff in error Fetzer is not connected, and the other the judgment denying the motion of Fetzer to open the final judgment and allow him to plead and answer, with which judgment the other three plaintiffs in error are not connected. In support of the motion to dismiss, the defendant in error relies on the case of *Western Assurance Co.* v. *Way,* 98 *Ga.* 746 (27 S. E. 167). In that case the same plaintiff sued two different insurance companies on policies covering the same property. By agreement of counsel in the two cases, the trial judge ordered the cases consolidated and tried together before the same jury. Separate verdicts were returned against each of the defendants, and they filed separate motions for a new trial, which were also consolidated and heard together. The court rendered one judgment overruling both motions. Both defendants joined in one bill of exceptions, excepting "jointly and severally" to the judgment rendered. The Supreme Court held that the single judgment overruling both motions for a new trial was in effect "the equivalent of two separate judgments overruling respectively the two motions" and dismissed the bill of exceptions. In *Hicks* v. *Walker,* 105 *Ga.* 480 (30 S. E. 383), it was held that where two actions in favor of the same plaintiff, but against different defendants, were consolidated in the court below and referred to an auditor, who reported thereon, making separate findings against each defendant, and where the defendants joined in filing exceptions to the auditor's report, one bill of exceptions, united in by both defendants, did not lie to review alleged errors in the judgment disallowing the exceptions to the auditor's report. In *Haralson County* v. *Pittman,* 105 *Ga.* 513 (31 S. E. 183), it was held: "Where two cases against the same defendant and in favor of different plaintiffs, who have no privity of interest of any sort between them, are by consent of the parties tried together before an inferior judicatory, the judge of the superior court can not entertain jurisdiction over the cases by one petition for certiorari complaining of the verdict in favor of each plaintiff; and this court has no jurisdiction in such a case brought here by one writ of error complaining of the judgment of the court below in

overruling the petition for certiorari." The foregoing cases are authority for the proposition that one bill of exceptions does not lie to review two or more separate final judgments in two or more separate cases between different parties. In each of them, although the issues may have been substantially the same, the cases were different and the parties were different. There was no privity of any kind between the plaintiffs in error joining in the bill of exceptions. In the case at bar there is only one case. The defendant in error sued all of the plaintiffs in error, and one final judgment was rendered against them all, to which each of them excepts. They were all interested adversely to the defendant in error in the court below, and were on the same side of the same case. The mere fact that all of them are not interested in every order made by the trial judge is immaterial. To require two separate bills of exceptions in this case would increase the labor and time of this court, the labor and time of counsel, and the costs to the parties litigant. The learned and diligent counsel for the defendant in error have not cited us to any authority squarely supporting the motion, and every reason of expediency and simplicity of practice is against it. See, in this connection, *Butler* v. *Lewman,* 115 *Ga.* 752 (42 S. E. 98) ; *Western Union Tel. Co.* v. *Griffith,* 111 *Ga.* 551 (36 S. E. 859) ; *Hay* v. *Collins,* 118 *Ga.* 243 (44 S. E. 1002).

2. This brings us to a consideration of the orders of the court striking the answer filed by Heitmann, Manning, and Knight, and in refusing to allow the amendment thereto. Attention is again called to the fact that the second count is a suit against all the defendants as makers, and the note and the letter are set forth as constituting one contract. The letter is as much a part of the contract as the note itself; and the terms of the contract created by the two papers taken together can not be altered, varied, or contradicted by parol evidence of prior or contemporaneous agreements as to matters covered therein. Ordinarily, however, there can be no doubt that parol or other extrinsic evidence is admissible to show that a writing bearing every earmark of a complete and perfect contract is not in fact a contract at all, because of the non-performance of a condition precedent as to which the contract is silent. This is not varying the terms of a written contract by extrinsic evidence; for the simple reason that it shows that there is no contract in existence, and that therefore there is nothing

to which to apply the excluding rule.   The so-called parol-evidence rule presupposes the existence of a valid contract; and on the question as to whether or not a valid contract is in existence or has been created, generally parol or other evidence dehors the writing is always competent and legal.   Accordingly it may be shown by extrinsic evidence that the writing involved is not a valid or enforceable legal obligation, for the reason that it does not possess finality of utterance; that there never has been an agreement that the writing is a completed and finally-uttered embodiment of all the terms of a contract presently operative and binding.   A few cases will illustrate and delimit this principle.   In the great leading case of Pym v. Campbell, 6 E. & B. 370 (88 Eng. Com. L. 370), it was held that the defendant could show by extrinsic evidence that the writing sued on (on its face a complete and perfect contract for the sale of an interest in a patent) was not binding, for the reason that it was signed on an express mutual understanding that it was not to become operative until A. was consulted and approved, and that A. did not approve.   The writing did not in any way refer to the necessity for the performance of this condition precedent.   In Ware v. Allen, 128 U. S. 590 (9 Sup. Ct. 174, 32 L. ed. 563), a writing absolute on its face and signed by both parties was shown by parol evidence to have been signed on condition that it was not to become operative as a presently-binding contract until an attorney had been consulted and had approved.   A case identical in its facts with the Ware v. Allen case is that of Tug River Coal Co. v. Brigel, 86 Fed. 818 (30 C. C. A. 415).   In Cleveland Refining Co. v. Dunning, 115 Mich. 238 (73 N. E. 239), the plaintiff was allowed to show that a written order for the purchase of goods was not binding, because it was signed on an understanding, not referred to therein, that the order was not to be binding until the plaintiff had cancelled an order given to a third person.   In Moore v. Farmers' Mutual Insurance Co., 107 Ga. 199 (33 S. E. 65), a policy of insurance, on its face a completed contract, delivered to the insured in the sense that there had been a manual tradition thereof to him, was defeated by parol proof that the policy was handed over to the insured on condition that it was not to be binding until the insured had cancelled a policy on the same property in another company.   The policy in no way referred to such a condition.   In

Wilson *v.* Powers, 131 Mass. 540, a payee of a promissory note was allowed by extrinsic evidence to prove that a writing, signed by him and by the maker of the note, extending the time of payment, was not to become binding until assented to by the surety. The court said: "The manual delivery of an instrument may always be proved to have been on a condition which has never been fulfilled, in order to avoid its effect. This is not to show any modification or alteration of the agreement, but that it never became operative and that its obligation never commenced." In Blewitt. *v.* Borum, 142 N. Y. 357 (37 N. E. 119, 40 Am. St. R. 600), a contract relating to the right to sell and manufacture a binder for books, admitted by the defendant to have been signed by him and handed to the plaintiff, was defeated by proof of a parol condition that it was not to become operative until the plaintiff acquired the interest of a third person, which condition the plaintiff had never performed, nor had its non-performance been waived by the defendant. In Kelly *v.* ·Oliver, 113 N. C. 442 (18 S. E. 698), the defendant admitted he signed the writing sued on, but successfully pleaded in defense thereto the non-performance of a parol condition that the writing was not to become operative until twenty signatures had been obtained thereto. In McCormick Harvesting Machine Co. *v.* Faulkner, 7 S. D. 363 (64 S. E. 163,. 58 Am. St. R. 839), parol evidence was admitted to show that an ordinary promissory note, executed and delivered to the payee, was. delivered on condition that it was not to become binding until signed by another person. In State *v.* Wallis, 57 Ark. 64 (20 S. W. 811), sureties on a bond were allowed to show that they signed only on parol condition that the bond was not to be delivered finally until other signatures had been obtained. In Burke *v.* Dulaney, 153 U. S. 228 (14 Sup. Ct. 816, 38 L. ed. 698), the maker of a promissory note, given for the purchase-price of an interest in a mine, was allowed to show by parol that he delivered the note to the payee on condition that it was not to be binding until he (the maker) had inspected the mine and approved it; that he had inspected the mine and disapproved it and had de·manded back the note. The Supreme Court of the United States, through Mr. Justice Harlan, said: "The issue here is between the original parties to the note. And the evidence offered by the appellant and excluded by the court did not in any true sense con-

tradict the terms of the writing in suit, nor vary their legal import, but tended to show that the written instrument was never in fact delivered as a present contract, unconditionally binding upon the obligor according to its terms from the time of such delivery, but was left in the hands of Dulaney, to become an absolute obligation of the maker in the event of his electing, upon examination or investigation, to take the stipulated interest in the property in question. In other words, according to the evidence offered and excluded, the written instrument upon which suit is based was not, except in a named contingency, to become a contract, or a promissory note which the payee could at any time transfer rightfully. Evidence of such an oral agreement would show that the contingency never happened, and would not be a contradiction of the writing. It would prove that there was never any concluded, binding contract entitling the party who claimed the benefit of it to enforce its stipulations. The exclusion of parol evidence of such an agreement could be justified only upon the ground that the mere possession of a written instrument, in form a promissory note, by the person named in it as payee, is conclusive of his right to hold it as the absolute obligation of the maker. While such possession is undoubtedly prima facie, indeed should be deemed strong, evidence that the instrument came to the hands of the payee as an obligation of the maker, enforceable according to its legal import, it is open to the latter to prove the circumstances under which possession was acquired, and to show that there never was any complete final delivery of the writing as the promissory note of the maker, payable at all events and according to its terms. The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time suit is brought. But the rule has no application if the writing was not delivered as a present contract." In *Bonner* v. *Nelson,* 57 *Ga.* 433, it was held that the surety on a promissory note could successfully plead in defense thereto that his signature was appended to the note on the distinct parol understanding and condition, assented to at the time by the payee, that the note was not to be binding until signed by another person. In *Hansford* v. *Freeman,* 99 *Ga.* 376 (99 S. E. 376), where a promissory note was signed and delivered by the maker to the payee's agent on parol condition that it was not to become operative or

38

binding until the happening of a certain contingency, the non-happening of the contingency was held to be a good defense to the note.    The cases of *Moore* v. *Farmers' Insurance Co.,* supra, and *Hansford* v. *Freeman,* supra, were cited and approved by the Supreme Court recently in the case of *Smith* v. *Georgia R. Co.,* 131 *Ga.* 470 (62 S. E. 673).    See also *Am. Jobbing Asso.* v. *Register,* 5 *Ga. App.* 543 (63 S. E. 599).

It will be noted, however, that in none of the cases just mentioned was the condition covered by the writing involved.    There is a plain difference between showing by extrinsic evidence the non-performance of a condition precedent as to which the writing is silent, and showing by extrinsic evidence that the writing is incomplete or not finally uttered, because of the non-performance of a condition stated in the writing to have been performed or to have been agreed upon as unnecessary.    In the former case the writing is not contradicted; in the latter it is.    If, therefore, due consideration be given to the reasons which justify the existence of the parol-evidence rule, the principle which was the foundation of the decisions in those cases must be limited, to the extent that where the contract itself, as written, agreed upon, and signed, specifically states that upon the performance of a certain condition precedent, the contract shall become complete and binding, and that after that time  nothing shall remain to be done by either party preliminary to the complete and final utterance of the writing as a presently-binding and all-comprehensive embodiment of the entire agreement, then extrinsic evidence of an agreement as to other conditions would be incompetent.    For example, if the written instrument, as agreed upon and signed by both parties, contains a stipulation that it is not to be binding until it is signed by a certain number of persons named therein, and that the signatures of these and these only are to be attached thereto, it would be a violation of the so-called parol-evidence rule to allow parol evidence of an agreement that other signatures than the ones named in the contract were to be secured as a condition precedent to its final utterance as a completed legal act.    This would be an attempt to contradict a written expression of intention by a less trustworthy method of proof.    And, after all, the real raison d'être of the rule excluding parol or other extrinsic evidence which contradicts or alters a written agreement  is to be found in the ele-

mentary legal principle that the law looks to express, and not abstract intent, and holds a man to the natural and probable consequences of what he has said, and not what he thinks he has said. Words, whether oral or written, are but vehicles for conveying ideas; and language, whether communicated orally or in writing, is the best means we have yet devised whereby men may express to one another their ideas and intentions. This being so, the law concerns itself only with the language used, and not with abstract states of mind wholly uncommunicated. When a man's abstract intention is contradictory of his expressed intention (whether expressed verbally or by written symbols), it is legally immaterial. So, where a written expression of intention fairly construed is unambiguous, the writer is bound by the language he has used, and can not show that he has an abstract idea in mind at variance with such language. As has been so ably said by Mr. Wigmore, "We are to fix the person with such expressed consequences as are the reasonable result of his volition. In other words, the act legally effective will be determined, in respect to the three elements of subject, terms, and finality, by that expression of it which results, to the other person in the transaction, as the consequence, reasonably to have been anticipated under all the circumstances, of the volition of the actor." 4 Wig. Ev. §2413. When a man has put his signature to a writing expressing his assent to the terms thereof, he has done an act to which the law attaches consequences just as definite and ascertainable as if he had commited some act in the domain of torts. Having led the other party to naturally believe that he has fully assented to the terms of the writing, he can not show that he had in his mind a different idea. Unless this were true it would be impossible for parties to put their agreements in writing in such manner as that they would possess comprehensiveness and finality—elements so very necessary and important in this day and time, when we have removed the common-law rule which disqualified parties as witnesses in their own behalf, but as yet have been unable to perfect human recollection or remedy the impairment thereof created by self interest. The written embodiment of the agreement is the very res gestæ of the transaction, so to speak, and is more reliable than the subsequent recollection of interested witnesses.

We come now to the exact question in this case, which is within

a narrow compass, to wit, whether the plea, and the proffered amendment, alleged the non-performance of a condition precedent which contradicts either the note or the letter, or the contract created by both of them together.    The plea and the proffered amendment allege, in substance, that the nine defendants and four other persons, to wit, Peeples, Howkins, Henkin, and O'Brien were indorsers on a note of a corporation of which all of them were directors; that the nine defendants and Peeples indorsed a renewal of this note on the distinct understanding that all of the old indorsers would indorse the new note before it should be binding or complete; that three of the original indorsers, to wit, O'Brien, Howkins, and Henkin, did not sign the renewal note, but that, nevertheless, the bank, concealing the fact from the defendants who had signed, kept the renewal note and procured several other renewals thereof, all the while concealing from the defendants signing that all the old indorsers were not signing; that as soon as the nine defendants ascertained that all the old indorsers were not signing the new notes, to wit, on February 7, 1908, the bank requested them to sign the letter, prepared by it, and the note sued on and referred to in the letter; that defendants signed the letter and the note on the distinct mutual understanding that neither the note nor the letter would be effective, complete, or binding until the bank had procured the signature of Peeples (who had signed every renewal note up to that time) to both the letter and the note, and that the bank had never performed this condition precedent.    Let it be noted right here that the amended answer does not attempt to set up that the signatures of all the indorsers of the original note were to be obtained to the note and the letter as a condition precedent to the finality of their utterance as complete, presently-binding, legal obligations.    Such a defense would have been defective in that it would have sought to set up the non-performance of a condition precedent, the necessity for the performance of which is negatived by the contract itself, and would therefore have violated the rule which has been discussed above.    The language of the letter is:  "We beg to state that we have been unable to get all the old indorsers to indorse a new paper, and we therefore request you to accept the note indorsed by us and enclosed herewith, in payment of the old notes."  To prove by extrinsic evidence that all the original indorsers were

to sign the note would be directly in the teeth of the letter, which states to the contrary. But according to the answer and the amendment, all the original indorsers were not to sign, but all the indorsers of the renewal notes,—that is to say, all the original thirteen indorsers, except Howkins, Henkin, and O'Brien. Does this contradict anything either in the letter or in the note? The words "all the old indorsers," appearing in the letter, mean the thirteen original indorsers and not the ten indorsers who had signed the renewal note immediately preceding the one in suit. This is evident from the allegation in the plea that the letter was signed at the request of the bank as soon as the defendants discovered that three of the original indorsers had not been signing any of the renewal notes. Peeples had been signing every renewal note up to that time. The language used in the letter is consistent with the idea that its purpose was merely to cover definitely the question which had been mooted up to that time, namely, that in future it was definitely understood that Howkins, Henkin, and O'Brien were not to sign the note or the contract. The word "we," used in the letter, is not defined therein otherwise than by the exclusion of the idea that all of the thirteen indorsers were to sign, and does not exclude the idea that Peeples was to sign. Suppose Peeples had signed, still the words in the letter, "we have been unable to get all the old indorsers to sign," would have been true. If the letter had stated specifically that "we have been unable to get Peeples, Howkins, Henkin, and O'Brien, indorsers on former notes, to sign a renewal note, and we enclose herewith a note signed by us," then the idea that Peeples was to sign could not be set up by extrinsic evidence. Since, however, the fact as to whether or not Peeples was to sign does not appear from the letter or the note, proof by extrinsic evidence that he was to sign as a condition precedent to the final utterance of the written documents as completed legal obligations does not alter, vary, or contradict the terms of the written contract, but shows that there never has been a written contract—possessing the element of finality of utterance—made between the parties.

But, say counsel for the bank, "If this letter means anything, it means that the parties enclose this note to the bank requesting that it be accepted, although all had not signed. It was offered as the complete contract, as the final and complete arrangement. It

shows that the writers had undertaken to get all to sign, and is utterly inconsistent with the idea that the bank assumed his obligation. According to the letter, these parties unite in this letter, which they send or deliver to the bank, enclosing the note sued on, and state to the bank, in effect, that some of the former parties have not signed and are not going to sign: 'We have been unable to get them to sign, but all have signed who are going to sign, and we request you to accept this note as it is. We enclose it with this request. It is complete so far as we are able or expect to complete it.'" The fallacy in this argument, as we see it, is that it assumes that the letter was sent or delivered to the bank unconditionally. The letter speaks only from the time that it was finally and unconditionally delivered, which time, according to the plea, has never arrived. If the letter was complete, the note was complete; but if the letter was not complete, there is nothing to show that the note was complete. Suppose only two of the signatures of the thirteen old indorsers were attached to the note and the letter, and that the bodies of these documents were in every respect like they are at present. Could not the two indorsers who had signed set up by parol that they signed on the express mutual understanding that the note and the letter were not to be complete until other signatures had been obtained, and that both the letter and the note were delivered to the bank on this condition? Does the letter in its body negative the idea that more than two of the thirteen old indorsers were to sign it? If not, how does it negative the idea that ten of the thirteen old indorsers were to sign it? The body of the letter is entirely consistent with the idea that any number less than all of the thirteen old indorsers were to sign it before it should be complete and binding—before it should speak as the obligation of those who had signed. "'All' means every one, or the whole number of particulars." I Words & Phrases, 312. Therefore, when the letter says in its body that not all were to sign, this means simply that not every one was to sign it, but is consistent with the idea that every one except one was to sign it. The only difference between this promissory note and all the other promissory notes in the cases cited above in which the parol condition of additional signatures was allowed is that here we have a letter. But the plea says there is no letter, for the reason that it was never complete as a letter, that it was delivered to the bank

on a condition to be performed by the bank, and that the bank has never performed this condition. Nor does the fact that there had been a manual tradition of the documents to the bank affect the result. Every case to which reference has been made in this opinion fully recognizes the rule that there may be a conditional delivery of a contract, such as this one, to the obligee, and that proof of failure to perform a condition attached to the act of delivery will invalidate the contract. Take, for example, the case of *Moore v. Farmers' Mutual Ins. Co.,* 107 *Ga.* 199 (33 S. E. 65). The policy of insurance there had been handed over to the insured, and it was in his possession, bearing every earmark of a complete and perfect contract, and yet the court allowed proof of a parol condition, unperformed, to defeat recovery on the policy. So in the case of Burke *v.* Dulaney, 153 U. S. 234 (14 Sup. Ct. 816, 38 L. ed. 698), the promissory note was in the manual possession of the payee, possessing all the ordinary elements of a complete and perfect contract of that kind, and yet parol proof that delivery was made on a condition which had never been performed was held to defeat a recovery on the note. The rule of the common law, still of force in this State, that there could be no delivery in escrow of a deed to the grantee, does not apply to the species of contract involved in this case. In olden times, when form was everything and substance nothing, and the only method of transferring title to land was by foeffment with livery of seisin, the transfer of title was accomplished by formal ceremony alone. Usually the transferor and the transferee would go together upon the land, and the former would hand to the latter a piece of soil, or place in his hand the hasp or ring of the door, or a rod, or perhaps a glove. This ceremony was symbolic of delivery of the land itself; thereafter the transferee or foefee had been invested with livery of seisin, and he was the owner of the land. 2 Pollock & Maitland, History of the English Law, 82. When in later times the art of writing gained headway and came into general use in legal proceedings, the law sanctioned the transfer of title to land by a grant or a deed. Much of the older ceremony formerly attending the transfer of title by foeffment with livery of seisin clung to the new method of transfer by grant or deed. The formal act of delivering the deed to the grantee was a mark of finality, back of which the law would not look; delivery to the grantee must be absolute and not conditional. To

quote again from Mr. Wigmore, "A conditional delivery in escrow to the grantee has come down to us traditionally as a complete act, the condition being deemed vain.   But this is an arbitrary distinction; no reason and no policy justifies it.   In England the older rule, as handed down in Coke's treatises, has for more than two generations been repudiated.   In the United States it has been generally trenched upon so far as to recognize an escrow to a co-obligor as incomplete.   In other respects, it is maintained by the authority of the older decisions in most jurisdictions.   But it is being gradually cut away, sometimes by subtly recasting the definition of a delivery; and the solid establishment of the contrary rule for contracts and writings in general (i. e. other than sealed instruments—bonds and land-deeds) will ultimately efface this last tradition of formalism."    4 Wig. Ev. §2408.

There is no estoppel in this case.   From the transaction as it is set forth in the plea, there is nothing by which the defendants are estopped from setting up non-performance of the condition precedent.   If, from a fuller investigation into the facts, it should appear that the defendants have waived performance of this condition (if in fact it be found by the jury to have been agreed upon), or have done anything else which could be construed as a representation, and that because of this representation the bank has acted to its injury, then they would be estopped from relying on the non-performance of the condition.   See *Lewis* v. *Commissioners,* 70 *Ga.* 486 (2).

3.   We find no error in the action of the court in refusing to open the judgment and allow Fetzer to demur and plead.   Under the law, cases are triable in the city court of Savannah at the first term, and answers should be filed on the first day of the term. Fetzer made no appearance of any kind, although he had been regularly served, until more than thirty days after the term had commenced, and until four days after final judgment had been rendered against him.   He then offered no excuse for his non-appearance at an earlier time, but demanded as of right that the judgment be opened upon the payment by him of the costs.   Before 1905 he admits that the judge would have had no power or authority to grant the motion.    Civil Code of 1882, §4926; *Dodson Printers' Supply Co.* v. *Harris,* 114 *Ga.* 966, 968 (41 S. E. 54); *Thurmond* v. *Groves,* 126 *Ga.* 779 (55 S. E. 915).    Fetzer, how-

ever, asserts that by the act of 1905 (Acts of 1905, p. 352), it is mandatory on the judge to open the judgment upon his paying the costs.    The language of the act is, "any default entered by the judges of the city court of Savannah may be opened during the term at which such default is entered, upon the payment of costs or at the discretion of said judges." The use of this language, it is argued, shows that if the movant pays the costs, he can demand as a matter of right that the default be opened; that it is only when no costs are paid, as a condition precedent to the demand, that the judge is given any discretion to refuse it.    This would be a curious result.    In a court wherein cases are triable at the first term, and when the law, in order that they may be ripe for trial, requires the pleadings .to be perfected on the first day of the term, a defendant may lie idly by until the very last day of the term, and then come into court for the first time and demand as a matter of right that he be given a standing in court merely because he is willing to pay the costs.    It would require plain language for us to attribute any such intention to the legislature. The language in the foregoing statute is easily susceptible of the construction that the trial judge is given a discretion to open defaults, and a further discretion to require that the movant pay the costs, or not.    In other words, the judge might, if he saw fit, open the default without requiring the payment of costs.    Vigilantibus non dormientibus jura subveniunt.    Usually the law does not help a man who has slept over his rights, without requiring him to give some reason for his non-vigilance.

There was no error in entering up one judgment against all the defendants after the plea was stricken.    In the second count they were sued as makers of one contract, and judgment could properly be entered up against them accordingly.

*Judgment reversed as to Heitmann, Knight, and Manning, and affirmed as to Fetzer.*

· HILL, C. J., dissenting.    I can not fully concur in the opinion of the majority of the court delivered herein.    My dissent is not from any proposition of law announced, but from what I conceive to be an erroneous construction of the contract sued on in connection with the allegations of the original plea and the amendment thereto.    It is conceded that the note executed to the bank by the plaintiffs in error and the letter written by them to the bank re-

lating to this note should be construed together as constituting the contract, and it is also conceded that this contract on its face is plain and unambiguous. The parties, therefore, having reduced their contract to writing, the law presumes that the writing contains the entire contract; and, in the absence of fraud, accident, or mistake in its procurement, its terms can not be contradicted in any manner or in any particular by parol evidence. The wise and salutary principle of law, upon which depends the value of written obligations, is not controverted. But it is insisted by the majority of the court that the defense relied upon does not contravene this well-settled principle of law, but is an effort to show by parol that there was in fact no complete contract between the parties, because of a non-performance of a condition precedent as to which the writing is silent. The question of difference between the majority of the court and myself is, therefore, within a narrow compass, and depends upon the interpretation of the terms of the contract and the allegations of the original answer and the amendment.

I do not care to go into any extended argument in the attempt to show the incorrectness of the views of the majority of the court or the soundness of my own. The question must be determined by reference to the terms of the contract and the allegations of the answer and the amendment. To my mind it is perfectly manifest that the note sued on was offered to the bank by the makers thereof as their final and complete contract, and was so accepted by the bank; and the language of the letter which accompanied the note is utterly inconsistent with the suggestion that the bank assumed any obligation with reference to the note. The makers of this note had undertaken to secure the indorsement of all those who had signed the original note. They had failed to do so; and, therefore, they requested the bank to accept the note indorsed by them, and which was inclosed with their letter, as their complete contract, in lieu of the original note; and if anything further was necessary to make clear the intention of the makers of the note and the writers of the letter, that the bank should accept the note as their final and complete contract, than the express request that it would do so, it was the additional request that the bank would send to them the former note, in order that they might bring suit to determine the liability of all the indorsers thereon. The defense,

therefore, that the bank undertook to secure the indorsement of Peeples on the note as a condition precedent to its completion as a binding contract upon those who had signed it, and who sent it to the bank with the request that it be accepted without such indorsement, is a contradiction of the plain meaning of the contract. If the letter inclosed to the bank had expressly stated that Peeples was not to sign the note, and the bank was asked to accept it without the signature and the bank did so accept it, it certainly could not be contended that the makers of the note who had made this request could subsequently be heard to set up the defense that Peeples had not signed the note. The letter accompanying the note does in substance state this fact and make this request. The writers say, "we have been unable to get *all* the old indorsers to indorse a new paper" ("*all* the old indorsers" included Peeples), "and we *therefore* request you to accept the note indorsed by us and inclosed herewith" (although Peeples has not signed it), "in payment of the old note," etc. After the bank had accepted the note without the signature of Peeples, and accepted it at the request of the makers of the note, who called attention to the fact that Peeples as one of the old indorsers had not signed the note, it certainly would be a defense inconsistent with their contract, as evidenced by the note and the letter, to allow them to make the defense that the contract was not complete because in fact the bank had undertaken to secure the signature of Peeples to the note and Peeples in fact had not signed it.

I think the court did right in refusing to allow the amendment to the answer and in striking the original answer. It was clearly and manifestly an effort to engraft upon the plain, unambiguous terms of a written contract a parol condition wholly inconsistent therewith and expressly negatived thereby. While the rule is well recognized that a written document may be shown by parol or other extrinsic evidence not to be a contract, because of a non-performance of a condition precedent as to which the writing is silent, yet the essential promise must be clearly established before the conclusion is permitted. The rule should not be extended, but strictly applied. It should not be allowed as a loophole through which to escape contract obligations, and should be construed so as not to destroy, but to preserve, that great safeguard which the law from the earliest times has thrown around written contracts. "Parol

evidence is inadmissible to add to, take from, or vary a written contract." ·