### 2321. HARTMAN STOCK FARM v. HENLEY et al.

1. There was no error in overruling the demurrer to the defendants' plea. While parol evidence is inadmissible to vary the terms of a written contract, it is always permissible for the defendant to show, if he can, not only that the writing was not in fact executed by him, but, even in a case where execution is admitted, that the written instrument was never in fact delivered as a present contract, unconditionally binding upon the obligor.
2. The court erred in directing a verdict for the defendants, for the reason that a finding in favor of their answer was not demanded. Their antecedent and coexistent obligation in writing, which related to the same subject as the note sued upon, and provided for their joint and several liability, would have authorized a recovery in favor of the plaintiff.
3. One who, in the purchase of personal property, enters into a written obligation, agreeing to pay therefor a stipulated sum and to execute notes with others, imposing upon the makers joint and several liability therefor, will not be heard thereafter to prove, by parol, conditions contradictory to a writing which, it is not denied, was executed as to signature as well as finally delivered.

DECIDED SEPTEMBER 20, 1910.

Complaint; from city court of Atlanta—Judge Reid. November 9, 1909.

*J. S. James,* for plaintiff.

*Roberts & Hutcheson,* for defendants.

RUSSELL, J. The Hartman Stock Farm brought a suit upon a promissory note for $933, attaching to its petition a copy of the note. The defendants filed an answer in which they set up that the note was not binding upon them, for the reason that an agent of the plaintiff represented to them that in the event that any of the purchasers of a certain horse (which was the consideration of the note), and especially W. C. Abercrombie, W. J. Camp, and T. S. Abercrombie, should fail or refuse to sign the note with them, the note was to be a nullity, and not to be delivered to the plaintiff. The plaintiff demurred to the answer, especially upon the ground that it undertook to add conditions to the note, other than those stated, and to vary its terms. The main insistence of the demurrer was that the answer tended to let in parol evidence to vary the terms of the writing which was the basis of the suit.

We think the court properly overruled the demurrer to the answer. As was held in *Heilmann* v. *Commercial Bank,* 6 *Ga. App.* 584 (65 S. E. 590), a written instrument "may, by parol or other extrinsic evidence, be shown not to be a contract at all, because of the non-performance of a condition precedent as to which the writing is silent. . . It may be shown by parol or other extrinsic evidence that the writing is not a valid or enforceable legal obligation because it does not possess finality of utterance as a completed, all-comprehensive, and presently operative embodiment of the entire agreement of the contracting parties." It is manifest, as pointed out in the *Heilmann* case, that there is a very marked difference between allowing parol evidence for the purpose of varying the terms of a writing whose execution and delivery are not denied, and allowing proof, even though it be parol, for the purpose of showing that, on account of the non-performance of some condition, perhaps not stated in the instrument, the alleged contract was in reality never created at all. And in that case we cited a number of authorities in this State and from other jurisdictions, in which it had been held that it may be shown, even by parol, that a writing absolute on its face, and whose terms are not disputed, has never become operative as a binding contract, because of a contingency

which was the subject of an extrinsic agreement not referred to in the writing itself. In the present case, in answer to the plaintiff's petition, the defendants had the right to set up, if they could, that they signed the note not as a completed contract, but subject to the condition that the note was to become binding only when signed by all of a number of designated persons, and that none should be bound unless all of those whom it was agreed should sign the note did in fact sign it. While parol evidence is inadmissible to alter or vary the terms of a written contract where the contract itself is admitted or proved, the delivery of a writing is as essential as its signing. Each one of the parties who signed the note in this case had the right to show that his execution of the note depended upon all of the parties signing who had agreed to sign with him, and that the completion of the contract and the delivery of the note itself were to be postponed and be subject to this condition. It was immaterial whether this condition was stated in the note or not, for if those who signed the note did show this distinct understanding, the note was not complete or executed until all had signed the instrument whose signatures were necessary to make it complete in accordance with the agreement. The rule stated in the Civil Code of 1895, § 3706, that "any fact going to show that the original contract was not obligatory, though executed, may be set up as a defense," is closely akin to the principle which we have just stated; though, of course, where it is expressly agreed that an instrument is to have no effect until three designated persons sign it, and only two of them in fact sign, the proposed contract fails to come into being as a legal entity. In such a case evidence brought to attack it can not be classified as being introduced for the purpose of varying the terms of a contract, but is rather an effort to deny its existence.

2. The court erred in directing a verdict for the defendants, for the reason that a finding in favor of their answer was not demanded. Their antecedent and coexistent obligation in writing, which related to the same subject as the note sued upon, and provided for their joint and several liability, would have authorized a recovery by the plaintiff. All of the defendants who were sworn testified that Johnson, whom they asserted to be an agent of the plaintiff, procured their signatures to the note only upon his expressed assurance that the note should not be binding unless signed by all of

those who had subscribed for the stallion, and especially unless signed by W. J. Camp, T. S. Abercrombie, and W. C. Abercrombie, —that it was to be void and to be cancelled unless these parties did in fact sign it.

There was no evidence sustaining that portion of the defendants' answer in which it was insisted that the three shares alleged to have been sold to W. J. Camp, W. C. Abercrombie, and T. S. Abercrombie were never in fact sold or subscribed for by them in good faith. On the contrary, the plaintiff introduced the following contract, which was signed not only by the defendants, but by W. J. Camp and the two Abercrombies:

"Douglasville, Ga., Aug. 10, 1905. Name of stallion: German Coach Daemon, No. 636. Hartman Stock Farm agree to sell the above-named stallion for $2,800 to the other undersigned subscribers, who, wishing to improve their stock, agree to pay Hartman Stock Farm $200 for each share in the said stallion. Capitol stock $2,800. Number of shares, 14. Payments to be made in cash, or one third in one year, one third in two years, and one third in three years after Aug. 15, 1905. Secured by joint and several negotiable notes, with interest at seven per cent. per annum.

| Hartman Stock Farm. | Shares. |
| --- | --- |
| A. S. Baggett & Co., | 2 |
| W. J. Camp, | 1 |
| W. W. Selman & Sons, | 1 |
| F. M. Yancey Jr., | 2 |
| W. C. Abercrombie & Bro., | 2 |
| J. T. Henley, | 1 |
| C. W. McGouirk, | 2 |
| T. S. Abercrombie, | 1 |
| J. H. Brock, | 1 |
| L. G. Camp, | 1 |
| | 14" |

This contract was pre-existent and coexistent with the note itself, and could have as well afforded the basis for a suit as the note itself. It will be noted that this contract was made 5 days prior to the purported agreement of August 15, 1905, by which the signers of the latter instrument agreed among themselves to form a stock company. The execution and delivery of this contract of purchase

not being denied, the Hartman Stock Farm could not be affected in any way by the subsequent agreement of the subscribers to form a stock company, or by a subsequent parol statement that none should be bound on the note unless others signed with them. The parties who signed the obligation which we have quoted above would be jointly and severally bound for the amount therein specified, whether they afterwards succeeded in forming a corporation or not, and even if Johnson, as agent, agreed that he would form the corporation for them. The defendants are not prejudiced in any of their rights under the obligation voluntarily assumed by them on August 10, 1905, by reason of the fact that the two Abercrombies and W. J. Camp did not sign the note. The obligation of the notes was to be several. Certainly, when this contract was introduced by the plaintiff, it became a question of fact for the jury whether the defendants signed the notes, as they testified, because of Johnson's representations, or in pursuance of their agreement and written obligation, made several weeks before, to make just such a note. In fact it is questionable whether, under the answer as filed, the testimony introduced in behalf of the defendants could seriously be considered, in the face of the written agreement and while its validity was unquestioned. We do not rule upon this at this time, but it would seem to be a violation of the rule, invoked by the counsel for the defendant in error, to permit the defendants to vary the terms of the agreement of August 10 by parol testimony in conflict therewith. To say the least of it, however, the introduction of this contract by which the defendants agreed to buy the horse in question, and to give their note, raised such an issue as should have been submitted to the jury. It is to be noted, too, that the defendant did not plead that the horse was not delivered to any one of the defendants, nor is there any plea that the horse was not all that he was represented to be. The whole contention of the defendants' answer upon this subject is that the horse was not delivered to the corporation which the defendants insist the plaintiff agreed to form. It seems that this proposed corporation was to be known as the Douglasville German Coach Horse Company, and on August 15, 1905, all of the parties who signed the contract of purchase of August 10 agreed to form a corporation by this name. Of course, this did not effectuate an incorporation, but the difficulty is that the agreement of August 10, which we have quoted, and which

is signed by the Hartman Stock Farm as well as by the defendants, was not made with the Douglasville German Coach Horse Company, but with certain individuals, part of whom are the defendants in this case. It is perhaps true that the defendants made a bad trade; they may have been overreached in making it; but the record shows that they failed to set aside the contract of August 10, 1905, by which they bound themselves to do the same thing, no more and no less, than the note which they attempted to disown requires of them. If the Abercrombies and W. J. Camp, as the evidence discloses, are men of large means, the defendants have their right of contribution preserved unimpaired by the contract which the Abercrombies and W. J. Camp appear to have signed.

As we stated above, the plaintiff could have proceeded upon the contract against all the parties, instead of suing on the note, which was not signed by three of those who signed the contract; but the failure of these three to sign the note will not relieve them from the obligation of the pre-existing contract in which they agreed to sign just such a note.

There is considerable testimony in the record in regard to the non-delivery of the horse. The testimony, however, is to the effect that the horse was not delivered to any member of the Douglasville German Coach Horse Company as such. As we have stated above, neither the contract nor the note was entered into by the Douglasville German Coach Horse Company, or refers to it. The Hartman Stock Farm is not a party to the contract or agreement of the subscribers who agreed to form this corporation. There is no evidence that the Hartman Stock Farm ever delegated to any of its agents the authority of forming corporations. In the absence of such evidence, authority to form a corporation can not be implied as one of the duties of one employed to sell a horse. The statement of Johnson that that was one of his duties could not be sufficient evidence of his authority to bind the Hartman Stock Farm in that respect. But even if a jury could infer all of these things from the evidence, there is certainly evidence in behalf of the plaintiff that Johnson had no such authority; and therefore it became such an issuable fact as rendered it necessary that the question should be submitted to the jury, if the question was material. In our view of the matter, however, if the horse was delivered to any one of the individuals who signed the contract or the note, in accordance with the terms

of the contract (and in the absence of any express direction that the horse should be delivered to a specified individual), the delivery of the horse to any one of the persons who purchased him jointly would be delivery to all of them; for the person to whom the horse was thus delivered could hold him in his own right and as agent for all of the other subscribers. Considering the case in the view most favorable to the defendant, there is nothing said in the original contract about a formation of a corporation, and the defendants were bound to know that no legal corporation had in fact been formed. There is, therefore, nothing in the point that the horse was not delivered to any officer of the corporation. The agreement to form a corporation, if it had any effect at all, might have created a partnership between the subscribers thereto, even though the name imported a corporation; but if that were the case, delivery of the horse to any one of the partners would be as good as delivery to the partnership as a whole. It is obvious, therefore, that the testimony in regard to the non-delivery of the horse is ineffectual for that purpose. If the subscribers to the contract of August 10, 1905, bound themselves jointly and severally to pay the amount specified, and agreed to execute the note to cover the total amount, it seems to us that those who signed the note could not be relieved from its payment merely because others may not have signed the note as all agreed to do. The joint and several obligations to pay would survive, though the joint and several obligations to make a note were not complied with. And it is questionable if one who does not deny having assumed several liability for the whole of the debt evidenced by a promissory note will be heard to say that he should be relieved from payment which he has undertaken, merely because one of his co-obligors declines to perform one of the duties which they jointly and severally assumed.

The court did not err in refusing to direct a verdict for the plaintiff; because it is never error to refuse to direct a verdict; but we are clear that the verdict should not have been directed in favor of the defendants upon the plea as filed.

The court did not err in ruling out the bill of sale purporting to have been made by the Hartman Stock Farm to the Douglasville German Coach Horse Company. There was no evidence that it had ever been delivered to the defendants, or either of them, or that they had any knowledge of such a paper.

All of the other exceptions, though not specifically referred to, are sufficiently dealt with in the opinion.      *Judgment reversed.*