19039. BANK OF TALLAPOOSA *v.* PATTERSON.

*E. S. Griffith, Walter Matthews,* for plaintiff.

*Lloyd Thomas,* for defendant.

LUKE, J. On December 27, 1919, J. T. Patterson gave his promissory note for $575 to A. P. and M. S. Walton for certain land. The Waltons indorsed and "traded" this note for value to Farmers and Merchants Bank. In February, 1921, said bank failed, and its assets, including this note, were taken over by the Bank of Tallapoosa. On April 14, 1923, the note was renewed by the bank's taking a second note, payable to Bank of Tallapoosa, due December 1, 1923, and signed "J. T. Patterson, M. S. Walton, A. P. Walton." On the face of this note the following was written: "Land note held as collateral." On February 8, 1924, Patterson *signed* the note sued on as principal. On this note, as on the second note, were the words: "Land note held as collateral."

In his answer to the suit on said note of February 8, 1924, the defendant pleaded as follows: "It is admitted that on the day named defendant signed his name to the note sued on, but defendant denies any liability thereon, for the reason that his name was so signed upon the distinct agreement and understanding between defendant and W. W. Heaton, the president of said Bank of Tallapoosa, who represented said bank in the matter, that the note was to be signed, and would be signed, by A. P. Walton and M. S. Walton, as makers thereof, and that the signing of said note by defendant would not create a legal liability on his part until the note should be signed by said A. P. Walton and M. S. Walton. But for such agreement defendant would not have signed said note, and as said note was never signed by said A. P. Walton and M. S. Walton, defendant says that he is not liable thereon."

The jury rendered a verdict for Patterson, and the Bank of Tallapoosa excepts to the judgment overruling its motion for a new trial, based upon the usual general grounds and upon two special

grounds complaining respectively of the admission of evidence and the charge of the court.

J. T. Patterson testified: "Now this was the first note that was given for the land, and then this note was renewed, and I took that up by giving the note with the Walton Boys' names on it. Then I gave the note sued on. It was to be a renewal of that if they would sign it." Patterson swore also: "Mr. Heaton (president of the bank) kept after me about making him a note, and said that he was being criticised for carrying old notes. . . He talked to me several times about it. A. P. Walton and M. S. Walton were to sign also. Why it was I signed before they were present and signed it too? He said he would have them sign it before it would be a note. . . I relied on what Mr. Heaton told me. . . But for that I would not have signed it. I believed his statement, and acted on it."

W. W. Heaton, president of the Bank of Tallapoosa, testified substantially as follows: Patterson could not pay anything on his original note, and renewed it by giving note of April 14, 1923, "signed by him as principal, and A. P. and M. S. Walton as securities." Nothing was paid on this renewal note, and witness got Patterson to renew it by giving note sued on. Witness never told Patterson that this note was not to be binding upon him until the Waltons signed it. Heaton further swore: "I told him I would get them to sign it if they would. . . I wrote them. . . They never did sign the note. They signed the note they did sign (the second note) as security. That was given for the original note signed by Mr. Patterson. They had indorsed it when they discounted it at the Farmers and Merchants Bank. There was no consideration given the bank, or any body else, by which they were to sign. They were just to sign as they had before, was my understanding." M. S. Walton swore: "We traded it (the note payable to the Waltons) to the Farmers and Merchants Bank. Then after that we did sign another one. I suppose this is my signature. . . We signed as indorser, indorser supposed to be. We indorsed the one that the bank first got. I might have indorsed it as principal. . . We did not owe the bank anything more than these security notes. We told him (Patterson) to tell Mr. Heaton we wasn't signing nothing. . . I got the money on the original note. Mr. Patterson didn't get any. . . When we put up the note we discounted it."

If the evidence sustains the plea that the agreement between Patterson and the bank was that the note was not to become a binding contract until the Waltons signed it "as makers thereof," the defense would be made out. "It is permissible to show that a promissory note, signed by one or more persons and apparently complete, is not in fact complete, by reason of the fact that it has never been delivered from one party to the other as a finally completed contract, but that it was simply left in the possession of the payee until some additional person should sign it before it should become a completed contract." *Bray* v. *Comer Mercantile Co.,* 32 *Ga. App.* 746 (124 S. E. 817); *Heitmann* v. *Commercial Bank,* 6 *Ga. App.* 584 (65 S. E. 590); *Pidcock* v. *Crouch,* 7 *Ga. App.* 299 (66 S. E. 971); *Hansford* v. *Freeman,* 99 *Ga.* 379 (27 S. E. 706). But the foregoing rule does not apply where "the person sued is liable as the principal debtor and would have no right to contribution or to a recovery over against the persons not signing." 8 Corpus Juris, 208, sec. 336. The evidence strongly presents the theory that the agreement between the bank and Patterson was that the Waltons were to sign as accommodation indorsers, or mere sureties, and not as principals. Therefore the following excerpt from the charge of the court is not the law of the case, ignores and denies the main contention of the plaintiff in error, and is harmful error: "The fact that previous notes existed between Patterson and the bank, that he owed the bank money, or that he and the Waltons owed it money, or that he owed it and the Waltons were security, would not prevent his right to make a contract with Heaton that this note would not become binding until they signed it. He would have a right to do that. In fact, the freedom of contract allows a man, although he owes a bank money, to say in the execution of a note that this note is not in renewal of the other until it is signed by so and so, and the parties may or may not be security, or may not be interested in the matter. They may be strangers to him. A man giving a note to a bank has the right to say who will go on it with him, and may stipulate that strangers, or anybody else, may sign, and if that is the contract, it is binding on the bank. In other words, in a contract the minds of the parties must meet as to its exact terms. They must be agreed about it, and there is no contract made until the parties have agreed; and if the parties come together and start the execution of a note, and it is agreed

648

that others shall sign it before it becomes binding, their minds have not agreed, and it is not a binding contract. This is the whole law of the case."

The objection to, and motion to rule out, the evidence of Patterson that the Waltons were to sign the note with him before it became a binding contract were properly overruled. The general grounds of the motion for a new trial are not passed on, and the judgment is reversed because of the court's charge.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*